999 S.W.2d 442 (1999)
In the Matter of M.A.C., a Juvenile.
No. 08-98-00132-CV.
Court of Appeals of Texas, El Paso.
July 8, 1999.
*443 M. Clara Hernandez, El Paso County Public Defender, Penny Lee Andersen, Assistant Public Defender, El Paso, for Appellant.
Jose R. Rodriguez, County Attorney, Ruben Gabriel Duarte, Assistant County Attorney, El Paso, for Appellee.
Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

OPINION
ANN CRAWFORD McCLURE, Justice.
M.A.C., a juvenile, appeals from a disposition order committing him to the Texas Youth Commission following an adjudication that he engaged in delinquent conduct by possessing more than 50 but less than 2,000 pounds of marihuana. We affirm.

FACTUAL SUMMARY
On March 19, 1998, sixteen-year-old M.A.C., a Mexican citizen and resident of Ciudad Juarez, Chihuahua, Mexico, attempted to enter the United States by driving a Dodge Caravan into the Paso Del *444 Norte Port of Entry. Because M.A.C. appeared extremely nervous, a customs inspector detained him at a secondary inspection area and a canine alerted to the gas tank of the vehicle. A search revealed a compartment in the gas tank where several bundles of marihuana, totaling 96.7 pounds, were concealed.
The State filed a petition alleging that M.A.C. engaged in delinquent conduct by committing the felony offense of possessing more than 50 but less than 2,000 pounds of marihuana. At the adjudication hearing, M.A.C. stipulated to the evidence and the juvenile court found that he had engaged in delinquent conduct as alleged in the petition. A juvenile probation officer, Manuel Barrera, prepared a pre-disposition report and recommended that Appellant be committed to the care, custody, and control of the Texas Youth Commission (TYC). This report was admitted into evidence without objection at the disposition hearing and Barrera testified on behalf of the State.
M.A.C. resides in Ciudad Juarez with his mother, O.G., who had been separated from M.A.C.'s father, M.R.C., for about a year and a half at the time of the disposition hearing. Barrera recommended that M.A.C. be placed in TYC because he is in need of rehabilitation. He could not recommend that M.A.C. be placed in the Mexican National Children's Program, a type of supervised probation for Mexican juvenile offenders, because that program requires the existence of some supervision and control over the child which did not exist in O.G.'s home since M.A.C. does not obey her rules and leaves the home entirely on weekends. Barrera believed it was questionable whether M.A.C.'s father has control over the child. Due to the juvenile department's policy, there are only two alternatives for juvenile offenders from Mexico: placement in the Mexican National Children's Program under supervised probation or commitment to TYC. Barrera did not testify that he would recommend probation for M.A.C. if he were a United States citizen, but he admitted "there would be more alternatives." Neither party elicited from Barrera the nature of those alternatives. Barrera was aware of juvenile offenders in the same circumstances who had been given probation.
Based upon the evidence, the juvenile court found that M.A.C. is in need of rehabilitation, and the protection of both the public and the juvenile required that disposition be made. The court further concluded that it is in M.A.C.'s best interest that he be placed outside of his home because his parents are unable to supervise, control, or discipline him, and efforts could not be made to prevent or eliminate M.A.C.'s removal from his home because he is an illegal alien and there are no programs or alternatives available that would prevent his removal. Accordingly, the juvenile court committed Appellant to TYC.

EQUAL PROTECTION
In Point of Error No. One, M.A.C. asserts that his commitment to TYC violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because a similarly-situated U.S. citizen would have been placed on probation. The Fourteenth Amendment provides that "[n]o State shall... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." [Emphasis added.] U.S. Const. amend. XIV. Aliens, even aliens whose presence in this country is unlawful, have long been recognized as "persons" guaranteed due process of law by the Fifth and Fourteenth Amendments. Plyler v. Doe, 457 U.S. 202, 210, 102 S.Ct. 2382, 2391, 72 L.Ed.2d 786 (1982); Shaughnessy v. Mezei, 345 U.S. 206, 212, 73 S.Ct. 625, 629, 97 L.Ed. 956 (1953); Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 (1886). Until a person leaves the jurisdictioneither voluntarily or involuntarily in accordance with the Constitution and laws *445 of the United Stateshe is entitled to the equal protection of the laws that a State may choose to establish. Plyler, 457 U.S. at 215, 102 S.Ct. at 2394.
The Equal Protection Clause directs that all persons similarly situated should be treated alike. City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 3253-54, 87 L.Ed.2d 313, 320 (1985); Plyler, 457 U.S. at 216, 102 S.Ct. at 2394. In examining the validity of state action that is challenged as violative of the Equal Protection Clause, the general rule is that state action is presumed to be valid and will be sustained if the classification drawn by the state action is rationally related to a legitimate state interest. City of Cleburne, 473 U.S. at 439-40, 105 S.Ct. at 3254. However, if the classification is based on race, alienage, or national origin, or if it serves to deny an affected group a fundamental right, the statutory scheme must survive strict scrutiny. Id. at 439-40, 105 S.Ct. at 3254. In such a case, the classification will be sustained only if it is suitably tailored to serve a compelling state interest. Id.
When presented with an equal protection claim, a reviewing court's first task is to determine the level of scrutiny to be applied to the challenged classification. M.A.C. asserts that strict scrutiny is appropriate since the basis of the classification is alienage. We disagree. M.A.C. is ineligible for ordinary juvenile probation, not because he is a Mexican citizen nor because he is an illegal alien, but because he is domiciled in Mexico, and consequently, he cannot be placed on probation in his parents' homes. As noted by the State, M.A.C. would have been treated the same had he been a United States citizen residing with his family outside of the country. Persons living outside of this country, regardless of their citizenship status, do not comprise a suspect class. Furthermore, the classification does not burden or impair the ability of a class to exercise a fundamental right. While the Juvenile Justice Code requires that certain findings be made before a juvenile is removed from his home, juveniles do not have a fundamental right to probation. See TEX.FAM. CODE ANN. § 54.04(c) & (d)(Vernon 1996 and Vernon Supp.1999). Cf. Flores v. State, 904 S.W.2d 129, 130 (Tex.Crim.App.1995)(holding that criminal defendants do not have right to probation and that sentencing of defendant to incarceration rather than probation due to defendant's inability to speak English was rationally related to government interest in sentencing individual convicted of second DWI offense). A juvenile court is vested with broad discretion to determine a suitable disposition of a child adjudicated delinquent. In the Matter of A.S., 954 S.W.2d 855, 861 (Tex.App.El Paso 1997, no writ); In the Matter of J.R., 907 S.W.2d 107, 110 (Tex.App.Austin 1995, no writ); see TEX.FAM.CODE ANN. § 54.04(c) & (d). A juvenile court's decision is guided by the Progressive Sanction Guidelines found in Chapter 59 of the Juvenile Justice Code, but the court may deviate from the guidelines so long as it imposes appropriate sanctions. See TEX.FAM.CODE ANN. §§ 59.003(a)(4) and 59.003(e)(Vernon Supp. 1999).
As no suspect class is involved and no fundamental right is implicated, the appropriate standard of review is whether the difference in treatment between those juveniles residing in the United States and those residing outside of its boundaries rationally furthers a legitimate state interest. Nordlinger v. Hahn, 505 U.S. 1, 11, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1 (1992); Flores, 904 S.W.2d at 131. In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification. Nordlinger, 505 U.S. at 11, 112 S.Ct. at 2332. Juvenile probation is not available to M.A.C. because the juvenile probation department lacks jurisdiction to supervise him in Mexico. Other than the Mexican National Children's Program for which M.A.C. did not qualify, there are no alternative programs available. Because the State has a legitimate *446 interest in taking steps to rehabilitate M.A.C. and protect the public, and because M.A.C. did not qualify for the Mexican National Children's Program, commitment to TYC is an appropriate sanction that is rationally related to these interests. See Flores, 904 S.W.2d at 131. Point of Error No. One is overruled.

FACTUAL SUFFICIENCY
In Point of Error No. Two, M.A.C. alleges that the evidence is factually insufficient to support the juvenile court's findings underlying the disposition order, and therefore, the court abused its discretion in committing him to TYC. M.A.C. is correct that a juvenile court's disposition order is reviewable both for sufficiency of the evidence supporting the necessary findings and an abuse of discretion. It is well established that the juvenile court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answers to a charge. A.S., 954 S.W.2d at 861; In the Matter of J.P.O., 904 S.W.2d 695, 699-700 (Tex. App.Corpus Christi 1995, writ denied). Further, we do not disturb the juvenile court's disposition order in the absence of an abuse of discretion. A.S., 954 S.W.2d at 861; In the Matter of E.F., 535 S.W.2d 213, 215 (Tex.Civ.App.Corpus Christi 1976, no writ). In conducting this review, we engage in a two-pronged analysis: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) Did the trial court err in its application of discretion? Leibman v. Grand, 981 S.W.2d 426, 429 (Tex.App.El Paso 1998, no pet.); Lindsey v. Lindsey, 965 S.W.2d 589, 591 (Tex.App.El Paso 1998, no pet.). The traditional sufficiency of the evidence review, articulated below, comes into play when considering the first question. Leibman, 981 S.W.2d at 429-30; Lindsey, 965 S.W.2d at 591. We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision or whether it is arbitrary and unreasonable. Leibman, 981 S.W.2d at 430; Lindsey, 965 S.W.2d at 591. The question is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); Leibman, 981 S.W.2d at 430; Lindsey, 965 S.W.2d at 591. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. Southwestern Bell Telephone Company v. Johnson, 389 S.W.2d 645, 648 (Tex.1965); Leibman, 981 S.W.2d at 430; Lindsey, 965 S.W.2d at 592.
M.A.C. challenges only the factual sufficiency of the evidence to support the juvenile court's findings. In reviewing this factual sufficiency challenge, we view all of the evidence but do not view it in the light most favorable to the challenged findings. See A.S., 954 S.W.2d at 860; R.X.F. v. State, 921 S.W.2d 888, 900 (Tex.App. Waco 1996, no writ); see also Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust will we conclude that the evidence is factually insufficient. See A.S., 954 S.W.2d at 860; R.X.F., 921 S.W.2d at 900, citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986) and Clewis, 922 S.W.2d at 129.
The juvenile court's exercise of discretion in making an appropriate disposition is guided by the requirements of Section 54.04 of the Family Code. A.S., 954 S.W.2d at 861. Section 54.04(c) provides that the trial court may not make a disposition placing a juvenile outside of his home unless the court finds that the child, in the *447 child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. TEX.FAM.CODE ANN. § 54.04(c). Further, in order to commit a child to the Texas Youth Commission, the court must additionally find and state in its disposition order that placement outside of the child's home is in the child's best interest and that reasonable efforts were made to prevent or eliminate the need for the child's removal from the home. TEX.FAM. CODE ANN. § 54.04(i). M.A.C. challenges the factual sufficiency of the evidence supporting each of these findings.
We will first consider the evidence offered by the State. M.A.C. resided in his mother's home along with three of his siblings. O.G. divorced or separated from M.A.C.'s father because he had been physically abusive of both her and the children. The couple had been separated for fifteen months at the time of Barrera's pre-disposition report. O.G. reported to Barrera that M.A.C. did not comply with the regulations of her home and she did not have control over him. Although M.A.C. completed elementary school and two years at Escuela Secundaria Tecnica # 60, he had not attended school during the previous year. O.G. had enrolled M.A.C. in two different schools but he refused to attend. Despite a curfew set by O.G., M.A.C. often arrived home after his curfew and on other occasions he did not come home at all. O.G. was unaware that M.A.C. had taken her border crossing card and had it in his possession when detained in connection with this case. The evidence also showed that M.A.C. had been referred to the Juvenile Detention Home in Cuidad Juarez for a graffiti offense where he remained in custody for a few days until his father took custody of him. Because M.R.C. had reportedly been out of town, Barrera did not interview him until after the pre-disposition report had been completed.[1] Barrera spoke with Rosa Maria Aguirre, the Director of the Mexican National Children's Program. She believed it would be difficult for M.A.C. to be in the program given the parents' lack of control, and consequently, she had not agreed to accept him.
M.A.C. offered his own testimony as well as that of both parents. O.G. denied telling Barrera that she lacked control of her son. Instead, she only told Barrera that M.A.C. sometimes came home a little late. M.A.C. always reported to her where he was going and he asked permission before spending the night with friends. M.A.C. also helped her with the housework. O.G. further disputed telling Barrera that M.A.C. refused to attend school. According to her, they were looking for a technical school to enhance M.A.C.'s ability to find employment. O.G. did not know that M.A.C. had been ordered to perform community service in connection with his referral for the graffiti offense in Cuidad Juarez or that he had failed to complete it.
M.R.C. told the juvenile court that M.A.C. always obeyed him and he would be willing to take responsibility for his son if he were released to the Mexican National Children's Program. M.R.C., a dietician for a day care center in Cuidad Juarez, lives along with his brother and another person in an apartment connected to his parents' home. M.R.C.'s parents and older brothers live in the other part of the home. One of M.R.C.'s brothers is a heroin addict and is currently undergoing treatment. After they completed an addition, there would be room for M.A.C. in the apartment. M.R.C. knew that M.A.C. had failed to complete the community service ordered in connection with the graffiti offense. He did not ensure that M.A.C. finished his community service because he had been out of town on a work-related *448 matter and then he had gone on vacation with his other children.
M.A.C. told the juvenile court that he generally obeyed his mother. He admitted that he had not completed the community service ordered in connection with the graffiti offense. M.A.C. promised that if placed in the Mexican National Children's Program he would obey his parents, enroll in school, and abide by the rules of the program.
M.A.C. relies on In the Matter of A.S. to support his argument that the evidence is factually insufficient to support the challenged findings. Although there are some factual similarities between the two cases, A.S. is distinguishable in all relevant respects. The record in A.S. contained no evidence to establish that reasonable efforts had been made to prevent or eliminate the need for A.S.'s removal from the home. A.S., 954 S.W.2d at 862-63. Here, the juvenile probation officer spoke with the director of the Mexican National Children's Program about M.A.C. but determined that he did not qualify for the program due to a lack of parental control and supervision. In A.S., unlike the instant case, the evidence supported the juvenile probation officer's conclusion that A.S.'s mother had adequate control over her children and could provide the level of care and support that is necessary to meet the terms of juvenile probation. Id. at 863. Although both parents denied a lack of control over M.A.C., the evidence supports a contrary conclusion. Given the facts in A.S., we concluded that the evidence did not support the finding that placement outside of the home was in A.S.'s best interest. Id. Since placement in the home of either of his parents is inappropriate, and consequently, M.A.C. could not be placed in the Mexican National Children's Program, M.A.C.'s need for rehabilitation could only be met by commitment to TYC. In light of these facts, the trial court's finding that commitment to TYC is in M.A.C.'s best interest is not contrary to the great weight and preponderance of the evidence. Finding no abuse of discretion, Point of Error No. Two is overruled. The disposition order and order of commitment are affirmed.
NOTES
[1] Even though M.A.C. committed the offense on March 19, 1998, M.R.C. did not contact the Juvenile Probation Department until some time after April 7, 1998, which is the date Barrera completed and turned in the pre-disposition report. M.R.C. told Barrera that he had been out of town.