**In the Matter of E.R.L., A Juvenile.**

No. 08–02–00259–CV.

Court of Appeals of Texas,
El Paso.

June 5, 2003.

. M. Clara Hernandez, El Paso County Public Defender, El Paso, for appellant.

Jose R. Rodriguez, County Attorney, El Paso, for appellee.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

E.R.L., a juvenile, appeals the modification of his disposition on a finding of delinquency, based on indecency with a child. After a hearing and evaluation, the trial court committed E.R.L. to the Texas Youth Commission. We affirm.

### Summary of the Evidence

On March 28, 2000, E.R.L. confessed to one count of indecency with a child. A jury found that he had not engaged in delinquent conduct with respect to five other allegations. At his disposition hearing on May 19, 2000, he was placed on out-of-home probation at Woodside Trails Therapeutic Camp in Bastrop County, Texas.

Reports suggest that E.R.L. was making progress with his therapy. He had been allowed to visit his mother and siblings in El Paso and his aunt in San Antonio on a number of occasions. He returned to the camp as required on each of these occasions. On October 19, 2001, an administrative review recommended that E.R.L. remain at Woodside Trails for an additional two months to work on "impulse and anger control, his sexual perpetration issues, and family issues." At the time, he was reported to have been both angry and sad that his mother was relinquishing her parental rights. In October

and November of 2001, E.R.L. began to act out, regressing to his old behavior when he arrived at the camp. This included becoming intimidating, controlling, and aggressive. He began to get back on track prior to running away in January. On December 11, 2001, the treatment team suggested that E.R.L. continue his treatment until March 2002. E.R.L. also indicated that he did not want to return to El Paso, preferring to stay in Bastrop County, Texas.

On January 29, 2002, E.R.L. ran away from Woodside Trails, taking a van that belonged to one of the house parents without consent. His girlfriend S.___ and one of her friends left with him. The vehicle was found the next morning in San Marcos, Texas, after a phone call from a friend of S.___. A juvenile warrant of arrest was issued by Judge Alfredo Chavez on February 1, 2002. After spending a few months in Mexico City, E.R.L. returned to his mother's house in El Paso on May 1, 2002. E.R.L. reported that while in Mexico City he consumed alcohol and marijuana. No criminal charges were filed. Following his return, the State filed a motion to modify disposition with regard to a number of probation violations.

The El Paso Juvenile Probation Department, through the testimony of E.R.L.'s probation officer, recommended that E.R.L. be committed to the Texas Youth Commission. According to the officer, returning E.R.L. to Woodside Trails was not an option at this point and other programs were not available for his specific needs. E.R.L. also has a strained relationship with his mother and is considered a flight risk. The only option other than Woodside Trails is Texas Youth Commission, which also has programs to address E.R.L.'s needs. The highly structured program of TYC has been suggested as integral for his treatment. Challenge Boot Camp is also not an option because they do not accept persons with sexual offenses. Neither E.R.L. nor his mother are in agreement on the recommendation to send him to TYC. Woodside Trails indicated that they would be willing to take E.R.L. back after he had been incarcerated for nine months to a year.

The defense elicited testimony from the probation officer that the Probation Department has sent some juveniles through an El Paso program with Reed and Associates for sex offender therapy. Initially, E.R.L. was referred to Reed and Associates for an evaluation. The probation officer testified that E.R.L.'s mother was living with her sister Elizabeth, but that she would move out so that E.R.L. could move into the home. The mother confirmed this. At the time of trial, she was unemployed and not receiving government benefits, so the officer did not "understand how financially she is going to be able to move out and get her own apartment." E.R.L.'s mother explained that she would be moving into her sister Armida's house. She also had spoken with both the Millennium Program and Therapy Services of El Paso, and found that they could provide outpatient rehabilitation services. According to her testimony, Medicaid would cover the costs of those services.

The recommendation of the El Paso Juvenile Probation Department was based on E.R.L.'s behavior prior to absconding, as well as that while he was away, particularly substance abuse, poor judgment, and refusal to take responsibility for his actions.

Another aunt in San Antonio was willing to take E.R.L. in. The counselors at Woodside Trails encourage him to work toward this goal. They do not want him to return to living with his mother. She appears to agree with this since she is trying to get her youngest son returned to her.

E.R.L.'s mother would like a relative to take custody of him. E.R.L.'s mother has shown that she cannot provide adequate supervision for him, has failed to set firm limits on his actions, and has voiced a desire to relinquish parental rights over E.R.L. and all but one of her other children. The Department of Probation also found it difficult to work with E.R.L.'s mother. In the beginning she was not compliant. By the latter part of 2002, however, she was working and was becoming better at complying with the requests of the Probation Department. By the time of trial, E.R.L.'s mother was living with her sister and was unemployed. The mother was willing to move from her sister's house so that E.R.L. could move into the home.

At the time of trial, E.R.L. was sixteen and a half years old. The department would only have another year and a half to work with the juvenile prior to his eighteenth birthday, at which time he would need to be transferred to the adult corrections system. If placed in TYC, however, E.R.L. could stay until he was twenty-one. It was the opinion of the Juvenile Probation Department that TYC would better be able to deal with the needs of E.R.L. than the adult system, even if the adult system did provide sex offender treatment.

Judge Alfredo Chavez made a number of findings based upon the testimony at the hearing. He began by assuring the parties that "I do not believe in sending El Paso County children outside of our county, especially through TYC whenever we have these services available here locally." Assuming that E.R.L.'s mother could provide adequate supervision, the judge did not believe that he would benefit from the out-patient services available in El Paso County, in particular with regard to the sex offender treatment. The judge then found that E.R.L.'s mother was not capable of providing the quality of care and level of support and supervision necessary to help E.R.L. meet the conditions of his supervision. He also found that E.R.L. was a flight risk and has made some very bad decisions, chalking the latter up to immaturity and lack of supervision. Finding that the youth needed rehabilitation, and that protection of the juvenile and the public requires it, Judge Chavez ordered E.R.L. committed to the Texas Youth Commission.

## Discussion

In two related issues, E.R.L. challenges the legal and factual sufficiency of the evidence used to justify the commitment to Texas Youth Commission. Finding ample evidence supporting the judgment, we affirm the decision of the trial court.

The Texas Family Code section 54.04(i) puts forth specific considerations for commitment to TYC:

(i) If the court places the child on probation outside the child's home or commits the child to the Texas Youth Commission, the court:

(1) shall include in its order its determination that:

(A) it is in the child's best interests to be placed outside the child's home;

(B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and

(C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

TEX. FAM.CODE ANN. § 54.04(i) (Vernon 2002); *see also In re C.J.H.*, 79 S.W.3d 698, 704 (Tex.App.-Fort Worth 2002, no pet.); *In re L.R.*, 67 S.W.3d 332, 335 (Tex. App.-El Paso 2001, no pet.); *In re T.K.E.*, 5 S.W.3d 782, 784 (Tex.App.-San Antonio 1999, no pet.). Where the underlying offense was indecency with a child, commitment to TYC is authorized. TEX. FAM. CODE ANN. § 54.05(f) (Vernon 2002). The findings of the judge of a juvenile court are not limited to reasons as enumerated in the statute. *See In re L.R.*, 67 S.W.3d at 337.

In addition to making the affirmative findings as required under section 54.04(i), the trial judge listed specific reasons for the disposition in the judgment of commitment:

1. The juvenile needs to be held accountable and responsible for his/her delinquent behavior.

2. The Court is of the opinion that the juvenile poses a risk to the safety and protection of the community if no disposition is made.

3. The Court is of the opinion that no community-based intermediate sanction is available to adequately address the needs of the juvenile or to adequately protect the needs of the community.

4. The Court is of the opinion that the gravity of the offense requires that the juvenile be confined to a secure facility.

5. The Court is of the opinion that the prior juvenile record of the juvenile requires that he/she be confined in a secure facility.

This satisfies the requirement of section 54.04(f) that the trial court specifically state the reasons for its disposition in its order. TEX. FAM.CODE ANN. § 54.04(f) (Vernon 2002).

E.R.L. challenges the determination of the trial court in its rejection of local, outpatient treatment. We proceed in our analysis noting that the legislature has directed that the Juvenile Justice Code be construed to effectuate a number of public purposes. TEX. FAM.CODE ANN. § 51.01 (Vernon 2002). Notably, the Code encourages maintaining the family's role in the juvenile's life whenever possible, "separating the child from the child's parents only when necessary for the child's welfare or in the interest of public safety and when a child is removed from the child's family, to give the child the care that should be provided by parents." TEX. FAM.CODE ANN. § 51.01(5) (Vernon 2002). This concern was reflected in the judge's statement that he did not like to send juveniles out of El Paso County if adequate programs are available locally. E.R.L. also challenges the findings that his extended family cannot provide a supportive home and the characterization of himself as a flight risk.

## Standard of Review

When juveniles challenge the legal and factual sufficiency of evidence to support an adjudication of a penal offense requiring proof by the State beyond a reasonable doubt as the basis for the finding of delinquency, the appellate court applies a criminal standard of review. *In re L.R.*, 67 S.W.3d at 338. However, when the challenge is to the sufficiency of evidence in a motion to modify disposition, the State must only establish a violation of the juvenile court's order by a preponderance of the evidence. *Id.* This has led courts to apply a less stringent civil standard when reviewing the disposition hearing or the modification of a disposition of a juvenile. *Id.* The current matter is a modification of disposition hearing, so the latter standard will be used.

Juvenile courts are vested with broad discretion in determining the suitable disposition of children found to have engaged in delinquent conduct. *In re C.J.H.*, 79 S.W.3d at 702 (citing *In re T.K.E.*, 5 S.W.3d at 784); *In re L.R.*, 67 S.W.3d at 338. This is especially true in hearings to modify disposition. *In re L.R.*, 67 S.W.3d at 338. Abuse of discretion does not occur as long as some evidence of substantive and procedural character exists to support the trial court's decision. *In re C.J.H.*, 79 S.W.3d at 702. Absent an abuse of discretion, we will not disturb the juvenile court's determination. *In re L.R.*, 67 S.W.3d at 338.

In conducting this review, we engage in a two-pronged analysis: (1) did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion. *Id.* The traditional sufficiency of the evidence review is used in answering the first question. *Id.* (citing *In re M.A.C.*, 999 S.W.2d 442, 446 (Tex.App.-El Paso 1999, no pet.)). The appellate review then continues to determine whether the trial court made a reasonable decision or whether it is arbitrary and unreasonable. *Id.* The question is not whether the facts presented an appropriate case for the trial court's action in the opinion of the appellate court, but whether the trial court acted without reference to any guiding rules and principles. *Id.* Our review of the trial court is informed by the explicit considerations put forth in Texas Family Code section 54.04(i), included above. Tex. Fam. Code Ann. § 54.04(i) (Vernon 2002); *see also In re C.J.H.*, 79 S.W.3d at 704; *In re L.R.*, 67 S.W.3d at 335; *In re T.K.E.*, 5 S.W.3d at 784.

### Legal sufficiency

In considering a legal insufficiency point, we consider only the evidence that tends to support the findings of the trier of fact and disregard all evidence and inferences to the contrary. *In re C.J.H.*, 79 S.W.3d at 703; *In re L.R.*, 67 S.W.3d at 339. If more than a scintilla of evidence exists to support the questioned finding, the point fails. *Id.*

We start our analysis by noting that indecency with a child is an offense for which commitment to Texas Youth Commission is authorized. Tex. Fam.Code Ann. § 54.05(f) (Vernon 2002). The question is whether it is justified in this particular case. The core of the argument raised by E.R.L. is that the trial court erred in its determination that there was no community-based intermediate sanction available to adequately address the needs of the juvenile. Within that argument is a challenge to the finding that E.R.L. cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

All evidence about E.R.L.'s mother indicates that she is not able to provide a stable home environment to help him meet the conditions of parole. It is important to note that her unemployment is not a factor in this calculus; however, other factors indicate that the available home life would not be conducive to E.R.L.'s therapy. First, his mother was relinquishing parental rights. This left E.R.L. angry, sad, and acting out. Second, she has failed to set firm limits on his actions in the past. Third, E.R.L.'s mother lives with her sister. She is willing to move out of that house so that E.R.L. can move in, but we have no evidence revealing what the environment is like within that household. Finally, E.R.L. had indicated to his supervision officer that he did not wish to return to El Paso. Although an aunt was willing to take E.R.L. into her home, there is no proof that her home would be better at providing an environment that would allow

E.R.L. to work through his issues. The courts do place their trust in homes that can show that they can provide a nurturing environment. *E.g., In re L.G.,* 728 S.W.2d 939, 945–46 (Tex.App.-Austin 1987, writ ref'd n.r.e.); *In re A.S.,* 954 S.W.2d 855, 862–63 (Tex.App.-El Paso 1997, no pet.). In this case, however, there is ample evidence that a stable household is not waiting for E.R.L. in El Paso. There is also evidence that an aunt in San Antonio is willing to provide a home for E.R.L., but no evidence is in the record to reveal what that household is like or what programs are available in San Antonio. Even the best of locally available programs could potentially be undermined by an unsupportive home environment. Additionally, the counselors specifically stated that E.R.L. was in need of a "highly structured behavioral program."

Turning to the out-patient care available in the El Paso area, the record does support the finding that certain of E.R.L.'s needs cannot be met by the programs available. Other than testimony from his mother, the only other evidence is the testimony of the probation officer and a number of reports, including one from Dr. Rodolfo Basurto from May 13, 2002. These evaluations support the judgment of the trial judge that TYC is the best option for E.R.L. Although the trial court acknowledged that programs were available in the community to help E.R.L. with his substance abuse, there remains testimony from the probation officer questioning the efficacy of the sexual offender treatment programs in El Paso. TYC can provide therapeutic treatment for these needs. Further, the Probation Department recommended TYC to provide the highly structured behavioral program "to help him develop impulse control skills." TYC has programs for all this, and in a highly structured program. TYC also has programs that target family dysfunction that

work with both the juvenile and the family toward reunification. For these reasons the probation officer believed that commitment to TYC was in the best interest of the child.

From this evidence, it appears that there is ample evidence to support the decision by the trial court to commit E.R.L. to TYC. In reviewing the record, this Court sees a history of attempts to put E.R.L. into the least restrictive program possible. He was placed with Woodside Trails, and had a period of attending public school, yet he persisted in his delinquent behavior. There is evidence that his mother's household is not prepared to offer a supportive environment. E.R.L. ran away from Woodside Trails, stole a van and fled to Mexico City. At the time of trial he was over sixteen, approaching the age when the juvenile system loses jurisdiction over him. For these reasons the trial judge committed E.R.L. to TYC. There is legally sufficient evidence to support that decision. The first point of error is overruled.

### *Factual sufficiency*

Review of the factual sufficiency requires an examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re L.R.,* 67 S.W.3d at 339. In other words, the evidence must be so weak or the evidence to the contrary is so overwhelming that the findings should be set aside and a new trial ordered. *In re C.J.H.,* 79 S.W.3d 698. As the appellate court, we may not pass upon the witnesses' credibility nor will we substitute our judgment for that of the trier of fact, even if the evidence would clearly support a different result than that reached by the trial court. *In re L.R.,* 67 S.W.3d at 339. Rather, if the competent

evidence supports the challenged finding, we will sustain it. *Id.*

 Contrary to the evidence listed above are suggestions by the defense that TYC is, perhaps, unnecessarily harsh under the circumstances. E.R.L.'s mother recognizes that her current situation is not one that can provide the quality of care and level of support and supervision that he needs to meet the conditions of probation. She is willing to move out of her sister's house so that someone in the family can provide that foundation for E.R.L. Although this is commendable, there is no evidence offered that her sister's house is a nurturing environment. Further, although the defense did elicit from the probation officer that some juvenile sex offenders are sent through Reed and Associates, at no time does the officer mention that the treatment available would be appropriate for E.R.L. In fact, she maintains her original recommendation that TYC is, at this point in E.R.L.'s therapy, the most appropriate option. No representatives from Reed and Associates or the other suggested rehabilitation centers were called to testify. Further, the defense did not counter the evidence that TYC is necessary to provide a highly structured environment, as expressed by both the probation officer and Dr. Basurto. There was no real contrary evidence, let alone any that so overwhelmingly conflicts with the decision of the trial judge to allow us to say that the current judgment is manifestly unjust or arbitrary and unreasonable. The second point of error is overruled and the judgment affirmed.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.