247 S.W.3d 319 (2007)
In the Matter of J.T., A Juvenile.
No. 08-05-00346-CV.
Court of Appeals of Texas, El Paso.
December 20, 2007.
M. Clara Hernandez, El Paso County Public Defender, El Paso, for appellant.
Jose R. Rodriguez, County Atty., El Paso, for state.
Before CHEW, C.J., McCLURE, and CARR, JJ.

OPINION
DAVID WELLINGTON CHEW, Chief Justice.
This appeal is from a commitment to the Texas Youth Commission (TYC). In his sole issue, the juvenile contends that the trial court abused its discretion when it found sufficient evidence to revoke the suspended commitment.
On December 9, 2004, J.T. was adjudicated a juvenile engaged in delinquent conduct, criminally negligent homicide, a state jail felony, after stipulating to the charges brought against him by the State. Appellant drove through a stop sign, and collided with another car, killing the other driver.
J.T. was ordered committed to TYC, but given suspended commitment conditioned upon successful completion of the Challenge Boot Camp, and his parents completing parenting classes and family counseling. *320 He was released from the residential portion of Challenge, and placed on intensive supervised probation. His probation terms included that he not be suspended or expelled from school.
J.T. received a three day in-school suspension as discipline for an incident at school. On September 8, 2005, the State filed a Motion to Revoke Suspended Commitment to TYC to modify the disposition order for violating the terms of probation. The modification was granted after a hearing where his probation officer, an assistant principal, and his girlfriend testified.
The only issue on appeal is whether the trial court abused its discretion by finding sufficient evidence to enter the orders modifying the disposition and committing him to TYC.
The Family Code provides that if the juvenile court commits the child to the Texas Youth Commission, the court:
(1) shall include in its order its determination that:
(A) it is in the child's best interests to be placed outside the child's home;
(B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and
(C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. . . .
TEX.FAM.CODE ANN. § 54.04(i)(1)(Vernon Supp.2007).
At the original disposition hearing, the juvenile court made those findings. To modify the disposition to commit a child outside the home, the trial court must find, by a preponderance of the evidence, that the child violated a reasonable and lawful order of the court. TAX.FAM.CODE ANN. § 54.05(f), (j); In re E.R.L., 109 S.W.3d 123, 127 (Tex.App.-El Paso 2003, no pet.), citing In re L.R., 67 S.W.3d 332, 335 (Tex. App.-El Paso 2001, no pet.). Juvenile courts have broad discretion in determining the proper disposition of children adjudicated to have engaged in delinquent conduct, and this is especially true in hearings to modify dispositions. In re T.K.E., 5 S.W.3d 782, 784 (Tex.App.-San Antonio 1999, no pet.). The juvenile court abuses its discretion when it acts arbitrarily or unreasonably. Matter of C.L., Jr., 874 S.W.2d 880, 886 (Tex.App-Austin 1994, no writ). There is no abuse of discretion when some evidence of substantive and procedural character supports the trial's court decision. In re E.R.L., 109 S.W.3d at 128. Absent an abuse of discretion, we will not disturb the juvenile court's determination. Id.
Our review uses a two-pronged analysis: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? In re M.A.C., 999 S.W.2d 442, 446 (Tex.App.-El Paso 1999, no pet.). Traditional sufficiency of the evidence review helps answer the first question. Id. For the second prong, we look to whether the trial court acted without reference to any guiding rules or principles. Id., citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).
In considering a legal insufficiency point, we consider only the evidence that tends to support the findings of the trier of fact and disregard all evidence and inferences to the contrary. In re C.J.H., 79 S.W.3d 698, 703 (Tex.App.-Fort Worth 2002, no pet.). If more than a scintilla of evidence exists to support the questioned finding, the point fails. In re E.R.L., 109 S.W.3d at 128. Review of the factual sufficiency requires *321 an examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. In re E.R.L., 109 S.W.3d at 129, citing In re L.R., 67 S.W.3d at 339. The evidence must be so weak or the contrary evidence so overwhelming that the findings should be set aside and a new trial ordered. In re E.R.L., 109 S.W.3d at 129, citing In re C.J.H., 79 S.W.3d at 698.
The essence of Appellant's argument is that there was no evidence or insufficient evidence to base a finding that J.T. violated a order of the court in the terms and conditions of probation that forbade him from being suspended from school. At the hearing to revoke suspended commitment to TYC, J.T.'s probation officer, Monique Hatten testified that J.T. and his parents were aware of the conditions of his probation. An assistant principal at J.T.'s school, Ms. Elaine Acosta testified that she had disciplined him by giving him a three day in-school suspension. The school has two options when suspending a student, either an in-school or out-of-school suspension. In an in-school suspension, the student is placed in a discipline room with an adult present, and is not allowed to attend regular classes. The out-of-school suspension does not allow the student to be present on school grounds. There is legally sufficient evidence to support the finding that J.T. violated the terms of his probation, which allowed for the revocation of his suspended commitment to TYC.
The only evidence was the testimony of his girlfriend, Ana Delgado, that J.T. was physically present at school. Appellant argues in his brief that an in-school suspension is not a real suspension; rather it is a form of detention or study hall. He argues that the only reasonable interpretation of the prohibition of suspension from school would not include an in-school suspension. Appellant cites no cases to this effect nor have we found any to support his position. The evidence is neither so weak nor is the contrary evidence so overwhelming as to require the findings to be set aside and a new trial ordered. We find the evidence to be factually sufficient.
We next consider whether the juvenile court abused its discretion in committing J.T. to TYC. Appellant contends that there is an abuse of discretion because of insufficient evidence to modify the disposition revoking the suspended sentence to TYC. However, there was enough substantive evidence supporting the juvenile court's decision to warrant a modification of the disposition thereby revoking the suspended commitment to TYC. With such evidence present, there was no abuse of discretion by the court. Appellant's sole issue is overruled.
We affirm the trial court's order.
CARR, J., concurring.
KENNETH R. CARR, Justice, concurring.
Upon successful completion of Challenge Boot Camp, J.T. was placed on intensive supervised probation. One of the conditions of his probation was that J.T. must "Attend school and not be truant, not be suspended or expelled from any public school during his probationary period." (Emphasis supplied).
J.T. was thereafter given a three-day "in-school suspension" as discipline for an incident at school.[1] During the "in-school *322 suspension," he attended his regular school and was given instructional assignments, but not in his regular classroom. His presence was counted toward the school's average daily attendance, upon which the school district's state-tax reimbursement is calculated.
Relying upon the dictionary definition, J.T. argues that he was not "suspended . . . from" school during this period. Specifically, he cites Merriam-Webster's definition of the noun, "suspension," as a "temporary forced withdrawal from the exercise of office, powers, prerogatives, . . .,"[2] and its definition of the verb form, "suspend," as "to debar or cause to withdraw temporarily from any privilege, office, or function. . . ."[3] In both cases, the dictionary cites suspending a student from school as an example of the usage.
In Chapter 37, Subchapter A, of the Texas Education Code, labeled "Alternative Settings for Behavior Management,"[4] the legislature has distinguished three types of discipline[5] to which a student may be subjected: suspension,[6] removal to a disciplinary alternative education program,[7] or expulsion.
Since J.T. was not expelled from school, we are faced with the question of whether his "in-school suspension" constituted a "suspension" or a "removal to a disciplinary alternative education program." We have located only two references in subchapter A to "in-school suspension." The first is in sec. 37.002:
If a teacher removes a student from class . . ., the principal may place the student into another appropriate classroom, into in-school suspension, or into a disciplinary alternative education program as provided by Section 37.008.
TEX. EDUC.CODE ANN. § 37.002(c). The other reference is contained in sec. 37.021:
If a school district removes a student from the regular classroom and places the student in in-school suspension or another setting other than a disciplinary alternative education program, the district shall offer the student the opportunity to complete before the beginning of the next school year each course in which the student was enrolled at the time of the removal.
TEX. EDUC.CODE ANN. § 37.021(a).
The Education Code thus distinguishes, in some locations, between a "suspension" and assignment to a disciplinary alternative education program. In these two locations, it draws a similar distinction between an "in-school" suspension and assignment to a disciplinary alternative education program. I therefore conclude that a "suspension," within the meaning of the Education Code, includes an "in-school suspension" of the sort to which J.T. was assigned.
I therefore concur in the result.
NOTES
[1] Nothing in its order sheds any light on the question of whether the trial court intended its order precluding J.T.'s "suspension . . . from" school to extend to the sort of "in-school suspension" to which he was assigned.
[2] Webster's Third New Int'l Dictionary 2303 (Philip Babcock Gove, ed. in chief, 1993)(emphasis supplied in Appellant's Brief).
[3] Id.
[4] TEX. EDUC.CODE ANN. §§ 37.001-.022.
[5] Id. at §§ 37.001(a)(4) and (6).
[6] See id. at § 37.005.
[7] See id. at § 37.008.