

# NUMBER 13-11-00453-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE MATTER OF D.H., A JUVENILE

## On appeal from the 272nd District Court
## of Brazos County, Texas, Sitting as a Juvenile Court.

## MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Rodriguez and Garza
## Memorandum Opinion by Chief Justice Valdez[1]

Appellant, D.H., appeals the trial court's order modifying disposition on a finding

of delinquency. The trial court ordered that D.H.'s probation be extended for a year and

ordered him to attend Hays County Boot Camp. D.H. contends by five issues that: (1)

the trial court did not have jurisdiction to hear the State's amended motion to modify

disposition; (2) the trial court failed to make an oral pronouncement regarding his plea of

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

"true"; (3) the trial court abused its discretion by accepting D.H.'s plea of "true"; (4) the trial court abused its discretion when it found that D.H. violated the terms of his probation as alleged by the State; and (5) D.H. received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

The State filed an original petition claiming that D.H. was a child engaged in delinquent conduct on June 9, 2010. The State alleged that D.H. had committed the offenses of theft and criminal trespass. After a hearing, the trial court found that D.H. had committed theft and was a child engaged in delinquent conduct. *See* TEX. FAM. CODE ANN. § 51.03 (West Supp. 2011) (setting out what constitutes delinquent conduct). The trial court ordered D.H. to comply with an eight-month probationary period and set the conditions of his probation. Pursuant to those conditions, D.H. was placed under house arrest and required to, among other things, obey all rules and orders given by his parents, attend school every day unless he had an excused absence, and obey the rules at school.[2] On January 24, 2011, the State filed an amended motion to modify disposition alleging that D.H. had violated the terms of his probation by: (1) leaving his home without permission while under house arrest on or about December 15 and 16, 2010, and January 14 and 18, 2011; (2) failing to attend school without an excuse on December 15, 2010, January 14, 2011, and January 18, 2011; and (3) failing to follow school rules on December 16, 2010.

---

[2] D.H. was instructed that while under house arrest, he "must remain at home unless attending school, employment, or church, or be under the supervision of a parent/guardian who is providing continuous supervision during any outing."

On March 8, 2011, the trial court held a modification hearing at which D.H. pleaded "not true" to the allegations that he left his home without permission and that he did not follow school rules. D.H. pleaded "true" to the State's allegation that he failed to attend school without an excuse.[3]

J.G. Wood, D.H.'s juvenile probation officer, testified that he was notified by D.H.'s mother that D.H. had left home without her permission on December 15 and 16, 2010 and January 14 and 18, 2011. Wood stated that D.H. was under house arrest at that time. Wood explained that on January 14, D.H.'s mother left D.H. at home while she took her other child to school. When D.H.'s mother returned, D.H. was not home. Wood said that on January 18, a Monday, D.H. again left home when his mother took her other child to school.

Wood testified that D.H. refused to take a test while attending College Station Middle School on December 16, 2010. Wood agreed that D.H.'s refusal to take the test was one of the precipitating factors in sending D.H. to "the Academy." Wood testified that D.H. also did not attend school on January 14 and 18, 2011. Wood agreed that those absences were unexcused. Wood explained that D.H.'s GPS monitor showed that he had been at a local park on December 15, 2010 and that he returned home after lunch.

D.H.'s mother testified that on December 15, 2010, D.H. was supposed to take the bus to school and that he did not attend school that day. D.H.'s mother was notified by the principal that D.H. missed school that day. D.H.'s mother stated that she did not give D.H. permission to go to the park on that day. D.H.'s mother said that on

---

[3] D.H. was fourteen years old at the time of the hearing.

3

December 16, D.H. was not home when she came home from work; D.H. told her that he was at basketball practice. D.H.'s mother did not give D.H. permission to go anywhere, and D.H. was under house arrest at the time.

According to D.H.'s mother, on January 14, 2011, she took her daughter to school; when she returned, D.H. was not home. D.H.'s mother did not give D.H. permission to miss school that day. D.H.'s mother testified that on January 18, 2011, she again took her daughter to school and when she returned, D.H. was gone. D.H.'s mother did not give him permission to leave the house that day.

D.H.'s mother stated that she found out that a referral regarding whether D.H. refused to take a test had been written by school personnel. D.H.'s mother stated that D.H. told her that he did not understand the test because he had not been in class. D.H. did not tell his mother that he disrupted the class.

D.H. testified that on December 15, 2010, he missed the bus to school, so he began walking and became sick. According to D.H., he then rode "the Texas A&M bus" to go home. D.H. stated that he waited for the bus approximately fifteen minutes, and it took about ten or fifteen minutes to reach his destination of "Pepper Tree," an apartment complex "across the street."[4] When asked if he told his mother that he was not feeling well, D.H. stated that he told his grandmother to tell her.[5]

D.H. testified that on December 16, 2010, he was at basketball practice when his mother came home from work and discovered him missing. D.H. admitted that he did not have his mother's permission to go to basketball practice that day. D.H. claimed

---

[4] D.H. later clarified that "Pepper Tree" is across the street from his home.

[5] D.H.'s grandmother did not testify at the hearing.

4

that on January 14, instead of attending school, he went to his grandmother's home. D.H. did not know whether his grandmother notified school officials that he would be absent. D.H. did not get permission from his mother to go to his grandmother's house. D.H. did not attempt to contact his mother that day. D.H. stated that on January 18, 2011, he did not go to school; instead, after his mother left for work, he walked to his grandmother's house. D.H. did not get his mother's permission to go to his grandmother's house and to miss school.

D.H. testified that he understood the conditions of probation and that he had previously been in court on several occasions. D.H. believed that his monitor was not working properly and disputed that he was at a park for four or five hours as recorded by the monitor. Later, D.H. claimed that he was confused about the terms of house arrest and that he did not know what it meant to be under house arrest. However, D.H. stated that he understood that he was required to get permission from his mother to leave the house.

The trial court found the allegations that D.H. left home without permission while under house arrest on December 15, 16, 2010, and January 14 and 18, 2011 to be "true."[6] The trial court found the allegation that D.H. failed to follow school rules to be "not true." After hearing evidence at a disposition hearing, the trial court extended D.H.'s probation for one year and sent him to Hays County Boot Camp. This appeal ensued.

## II.    TRIAL COURT'S JURISDICTION

---

[6] The trial court did not make an oral finding regarding whether D.H. failed to attend school without an excuse—the violation for which D.H. pleaded "true."

5

By his first issue, D.H. contends that "the trial court did not have jurisdiction to hear the State's [a]mended [m]otion to [m]odify [d]isposition due to improper filing of motions in the case." Specifically, D.H. argues that the State filed its motion in "Cause # 174-J-2010" and an amended motion in "Cause # 174-J-2010," however, the correct trial court's cause number was "147-J-2010." D.H. concludes, that based on this typographical error, the trial court lacked jurisdiction.

D.H. has not cited any authority, and we find none, supporting a conclusion that a trial court does not have jurisdiction over a case when the State's motions to modify disposition include the incorrect trial court cause number. Moreover, pursuant to section 51.04 of the family code, the juvenile court has exclusive original jurisdiction over proceedings involving the "delinquent conduct or conduct indicating a need for supervision engaged in by a person who was a child . . . at the time the person engaged in the conduct." TEX. FAM. CODE ANN. § 51.04(a) (West 2008). The county's juvenile board shall designate "one or more district, criminal district, domestic relations, juvenile, or county courts or county courts at law as the juvenile court . . . ." *Id.* § 51.04(b). D.H. does not contend that the 272nd District Court of Brazos County, Texas—the trial court that held the disposition hearing—was not designated by the Brazos County Juvenile Board as a juvenile court or that it lacked jurisdiction prior to the State's motions containing the incorrect cause number. Therefore, we are not persuaded that the trial court lost jurisdiction over the case when the State filed its amended motions with the incorrect cause numbers.[7] We overrule D.H.'s first issue.

---

[7] We note that the State's original petition requesting that the trial court find that D.H. was a child engaged in delinquent conduct was filed on June 9, 2010 and contained the correct trial court cause number.

6

### III.  ORAL PRONOUNCEMENT

By his second issue, D.H. contends that the trial court failed to make an oral ruling concerning the State's allegation that D.H. failed to attend school; therefore, D.H.'s plea of "true" to that allegation "would not support allowing the State to proceed to the Disposition portion of the hearing." The State counters that the trial court's "lack of an oral pronouncement regarding [D.H.'s] plea of true to his school absences did not prevent [the trial court] from reaching a disposition on how to modify [D.H.'s] probation" because the trial court also found that D.H. violated probation by leaving home without permission. We agree with the State.

We review the trial court's decision to modify a juvenile disposition under an abuse of discretion standard. *See In re J.G.*, 112 S.W.3d 256, 259 (Tex. App.—Corpus Christi 2003, no pet.). Hearings to modify the disposition of a juvenile are divided into two distinct phases. Tex. Fam. Code Ann. § 54.05(e) (West Supp. 2011); *In re J.G.*, 112 S.W.3d at 259. In the first phase, the trial court determines whether there is a reason for modifying a previous disposition; in the second phase, the trial court determines the necessary modifications that are appropriate. *In re J.G.*, 112 S.W.3d at 259; *see* Tex. Fam. Code Ann. § 54.05(e).

Only one violation of a condition of probation is necessary to support a trial court's decision to modify. *See In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). Here, D.H. pleaded "true" to the State's allegation that he missed school without an excuse. The trial court failed to make the oral pronouncement of its finding concerning this violation. However, the trial court after hearing evidence in the first phase of the hearing, also determined that D.H. violated his probation by

7

leaving home without permission while under house arrest. This finding was supported by competent evidence. Thus, the trial court did not abuse its discretion by entering the dispositional portion of the hearing due to its failure to orally pronounce its finding regarding D.H.'s plea of "true" to his school absences. *See id.* We overrule D.H.'s second issue.

## IV. D.H.'S PLEA OF "TRUE"

By his third issue, D.H. contends that the trial court abused its discretion by accepting his plea of "true" to the State's allegations that he failed to attend school on December 15, 2010, and January 14 and 18, 2011. Specifically, D.H. argues that the evidence was legally and factually insufficient to establish that he "violated a reasonable and lawful order of the court because D.H.'s plea of true was unsworn."

"When juveniles challenge the legal and factual sufficiency of evidence to support an adjudication of a penal offense requiring proof by the State beyond a reasonable doubt as the basis for the finding of delinquency, the appellate court applies a criminal standard of review." *In re E.R.L.,* 109 S.W.3d 123, 127 (Tex. App.—El Paso 2003, no pet.). However, a motion to modify the disposition of a previous adjudication requires proof of a violation of the juvenile court's order by a preponderance of the evidence. *Id.* We will apply the latter standard because the current matter is a modification of disposition hearing. *Id.*

The trial court's finding that D.H. left his house without permission on four occasions while under house arrest was supported by competent evidence and sufficient to support the trial court's conclusion that D.H. violated the terms of probation. *See In re T.R.S.,* 115 S.W.3d at 320. Therefore, even if the trial court erred in accepting

8

D.H.'s plea of "true" to the State's allegation that he missed school without an excuse, the trial court's ruling was nevertheless justified by its finding with regard to leaving the house without permission. *See id.* We overrule D.H.'s third issue.

## V. IDENTITY

By his fourth issue, D.H. argues that the evidence is legally and factually insufficient because "the State failed to identify [him] as the individual on probation in the cause which was before the trial court." The State argues that the record established that D.H. was the individual that the trial court found had violated the terms of probation.

As stated earlier, a challenge to the sufficiency of the evidence in a proceeding to modify the disposition of a previous adjudication requires proof of a violation of the juvenile's court's order by a preponderance of the evidence. *In re E.R.L.*, 109 S.W.3d at 127. Even under a reasonable doubt standard of review, the identity of a person who has committed an offense may be established by either direct or circumstantial evidence and even by inferences. *Wiggins v. State*, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.). Although direct in-court identifications are often preferred, if the circumstances pose no likelihood of confusion, they are not required. *Id.* When there has been no in-court identification by witnesses, "[t]he sufficiency of the evidence is then determined from the cumulative effect of all the evidence; each fact in isolation need not establish the guilt of the accused." *Id.*

In this case, the trial court referred to D.H. by name and took judicial notice of all of the proceedings in which D.H. had appeared before it. Wood identified himself as D.H.'s probation officer and stated that he had explained the conditions of probation to

9

D.H. Wood testified that D.H. had violated the terms of his probation by missing school without an excuse and leaving his home without permission while under house arrest. Wood consistently referred to D.H. by name. D.H. identified himself, under oath, and he acknowledged that he received and understood the conditions required of him while on probation. Finally, D.H.'s mother testified that D.H. was under house arrest and had violated the terms of probation by leaving the home without permission. Thus, the evidence was legally and factually sufficient to support the trial court's finding that D.H. was the individual the State accused of violating the terms of probation by leaving home without permission while under house arrest, missing school without an excuse, and failing to follow the school rules.[8]

By a sub-issue to his fourth issue, D.H. contends that he was not provided reasonable notice of the "exact allegations in the [State's] Amended Motion to Modify Disposition . . . ." because he did not receive ten days notice of the State's allegations.

Here, the trial court asked D.H.'s trial counsel if he had received at least ten days to prepare for the hearing; trial counsel replied, "I believe so." The trial court then stated, "Yes, back on February 25th, you were retained as new counsel. Plus, he's had counsel before that, and there has been ten days notice." D.H. responded that he had no objection to the trial court's acting as the juvenile referee in his case. The trial court asked D.H. if he received the State's amended motion to modify disposition on February 1, 2011, and D.H. replied, "Yes, ma'am." D.H. also stated that he understood the State's allegations. Therefore, the record shows that D.H. received notice of the State's

---

[8] In the trial court, D.H. did not allege that he was not the individual accused by the State of violating probation.

allegations more than ten days before the disposition hearing. Thus, D.H.'s contention is without merit. We overrule D.H.'s fourth issue.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

By his fifth and final issue, D.H. contends that his trial counsel provided ineffective assistance. Specifically, D.H. argues that his trial counsel elicited damaging testimony that supported the State's allegations and without this evidence, the trial court would have found the State's allegation "not true." We disagree.

A juvenile is entitled to effective assistance of counsel in a hearing to modify disposition. *See In re F.L.R.*, 293 S.W.3d 278, 280 (Tex. App—Waco 2009, no pet.); *see also* TEX. FAM. CODE ANN. § 51.10(a)(5) (West 2008). Ineffective assistance of counsel claims are evaluated under the two-part test articulated by the Supreme Court in *Strickland v. Washington*. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The *Strickland* test requires the appellant to show that counsel's performance was deficient, or in other words, that counsel's assistance fell below an objective standard of reasonableness. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 687. The appellant must also show that there is a reasonable probability that, but for counsel's errors, the result would have been different. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694. In determining the validity of an appellant's claim of ineffective assistance of counsel, "any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813.

11

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Id.* Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate . . . ."). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851. An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 (setting out that "in the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*"); *see Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994) (en banc) (stating that "we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment" and that "[d]ue to the lack of evidence in the record concerning trial counsel's reasons" for the alleged ineffectiveness, the court

12

was "unable to conclude that appellant's trial counsel's performance was deficient") (internal quotations omitted).

D.H. claims that his trial counsel elicited the only damaging evidence regarding whether he violated the terms of probation. However, during the first phase of the hearing, D.H.'s mother testified, on direct examination by the State, that on December 15, 2010 D.H. missed school and went to the park. D.H.'s mother stated that she did not give D.H. permission to go to the park that day and that D.H. was under house arrest. D.H.'s mother further testified that D.H. was not home when she arrived from work, that she did not give D.H. permission to leave the house, and that he was under house arrest at the time. D.H.'s mother also stated that on January 14 and 18 2011, D.H. left the home without her permission. In addition, Wood testified, on direct examination by the State, that on December 15 and 16, 2010, and on January 14 and 18, 2011, D.H. was under house arrest and that D.H. left his house without permission.

Thus, evidence supporting the trial court's finding that D.H. violated his probation was presented by the State. Moreover, D.H. does not provide citation to the record wherein he claims his trial counsel elicited "the damaging testimony." Therefore, we conclude that D.H. has not met his burden to show that his trial counsel's performance was deficient by cross-examining the witnesses regarding their direct testimony.[9]

Even assuming, without deciding, that D.H.'s trial counsel elicited damaging testimony during cross-examination that supported the State's allegations, the trial court had ample evidence elicited by the State supporting its findings. Thus, the trial court

_____

[9] D.H. asserts that his trial counsel allowed him "to plead true to the allegation without the benefit of knowing what D.H. was pleading true to." Although D.H. cites to specific pages in the record, there is nothing supporting D.H.'s bald assertion that his trial counsel was unaware of the State's allegations. Furthermore, trial counsel informed the trial court that he had conversed with D.H. prior to the hearing.

would not have found the State's allegation "not true" without the allegedly "damaging testimony." We conclude that D.H. has not met his burden to establish that but for his trial counsel's alleged error, the outcome of the proceeding would have been different. *See Thompson*, 9 S.W.3d at 812, 813; *see also Strickland*, 466 U.S. at 694. We overrule D.H.'s fifth and final issue.[10]

## VII. CONCLUSION

Having overruled all of D.H.'s issues, we affirm the trial court's order.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
7th day of June, 2012.

---

[10] D.H. claims that he "did not have proper counsel representing him before the trial court" because his trial counsel was "never granted authority to substitute for [his] prior counsel as the Order accompanying trial counsel's Motion to Substitute was not signed off on by either the Juvenile referee Glynis Gore or Presiding Judge Travis Bryan, III." D.H. does not provide a clear and concise argument with citation to appropriate authority supporting this claim. *See* TEX. R. APP. P. 38.1(i). Thus, this claim is inadequately briefed. *See id.*