COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 IN THE MATTER OF
 G.M., a juvenile,
  
                             Appellant.
  
  
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-02-00459-CV
  
 Appeal from the
  
 65th District Court
  
 of El Paso County, Texas
  
 (TC# 99,00843)
 
 




 

MEMORANDUM OPINION

 

G.M., a juvenile, appeals the trial
court=s judgment committing him to the
Texas Youth Commission.  He argues that
the evidence is neither legally nor factually sufficient to
support the trial court=s
disposition, urging that a lesser appropriate sanction was available, and
the only reason G.M. was not placed in that program was his undocumented
immigration status.  Finding there was
sufficient evidence to support the trial court=s disposition ruling, we affirm.

Facts








In August 2002, while on probation
for delinquent conduct consisting of driving while intoxicated, G.M. committed
criminal trespass.  After a disposition
hearing held on October 3, 2002, G.M. was committed to the Texas Youth
Commission.  In its judgment of
commitment, the trial court found that the disposition was justified because
reasonable efforts had been made to prevent the child from being removed from his
home, in that before the disposition currently at issue, the child had been
placed on probation, he had been referred to Aliviane,
intensive supervised probation under the Project Spotlight program, an
electronic monitoring program called Project Libertad,
the Life Skills program, that in addition to these programs, he had been
referred to psychological counseling, that he was not attending school and he
needed to enroll and continue his education, and he did not have legal status
in the U.S.

Background

G.M., at the time of the disposition
hearing, was fifteen years old; he is the youngest of three children.  G.M., his siblings, and his mother are
undocumented aliens.   His father is a
resident alien.  It is possible that he
could gain lawful status, but his parents have not pursued it.  G.M. and his nineteen-year-old girlfriend
have two children.  They all live in his parents= home in El Paso, Texas.








G.M. attended school approximately
two weeks during 2001.  At the time of
his disposition hearing, he was enrolled in high school, but had not attended
any classes there.  While in the juvenile
detention facility, he was required to attend the Delta Academy, and had done
quite well.  His probation officer believed
that he needed to be forced to attend school. 
While in Project Libertad, he missed his
counseling sessions on several occasions, which caused his termination from
that program.

In April 2002, a petition to
adjudicate G.M. delinquent based on domestic violence, driving while
intoxicated, possession of marijuana, and criminal trespass was filed.   He pleaded true to the driving while
intoxicated count, and the other allegations were
dismissed.  G.M. was placed on probation
in the Project Spotlight program.  While
in this program, he twice tested positive for marijuana.  G.M. failed to appear for counseling
appointments.  He was terminated from
that program and then referred to the Millennium program (the nature of which
is not discussed in this record).








 The juvenile probation department recommended
G.M. be committed to the Texas Youth Commission after considering
alternatives.  Originally, he was
considered for placement in a secure facility, Challenge Boot Camp.  His probation officer testified:  A[t]here was no finding, physically or
mentally, to keep him from entering the Challenge Boot Camp; however, given
that he is a Mexican national and he is undocumented, he was declined for the
program.@ 
The probation officer testified that although the boot camp staff felt
they could not take G.M. because of his immigration status, nevertheless the
judge could order him admitted to Challenge Boot Camp, and the officer had
known instances where a Mexican national had attended the boot camp.  The probation officer testified that G.M.
needed to attend school, which he was not doing in the community, that he
needed behavior modification, substance abuse treatment, vocational training,
and citizenship classes.  G.M.=s vocational and citizenship needs could not be met at boot
camp, but such programs are available at TYC. 
TYC would provide counseling services for G.M., his parents, his
girlfriend, and his children.  The
probation officer testified that he believed sending G.M. to TYC was in his
best interest, and the best interest of the community.

G.M. was also considered for return
to his home environment but it was decided that G.M.=s needs could not be met there
because of a lack of supervision in the home, and G.M. is not easily
supervised.  In the probation officer=s opinion, G.M.=s parents minimize his problems and
blame others for his delinquent conduct and truancy.  He also has a history of running away.  When at his parents= home, he stays home, or meets
negative peers at places he should not be. 
G.M., on the other hand, states that he does not go to school because he
needs to take care of his children.  G.M.
and his girlfriend are supported by G.M.=s parents.  His probation officer testified that G.M. had
probably exhausted community resources, and he had not seen improvement in his
behavior during the period of intensive supervision.








G.M. began his relationship with the
Texas justice system at the age of ten in 1998. 
That year he was apprehended for disorderly conduct and assault.  In 1999, G.M. pleaded true to delinquent
conduct in the form of assault, and agreed to pay restitution.  In 2000, G.M. entered a state program,
Project Libertad, which relied upon electronic
monitoring.  While in that program, he
violated his probation by committing criminal trespass and other offenses.  During this period, G.M. and his parents
participated in a state-sponsored parenting class.  In February 2000, G.M. tested positive for
marijuana, whereupon he entered the Aliviane Drug
Treatment program.

G.M=s mother disagreed with the
recommendation that he be sent to TYC. 
She agreed to participate in the Challenge Boot Camp program if he were
sent there.  G.M.=s father, on the other hand, stated, Aif it is for his own good, then, it=s fine.@ 
G.M. himself did not agree with the recommendation.  He stated that if the judge ordered him to
Challenge Boot Camp, he would participate and follow the rules.








The court found that G.M. was
eligible for placement at TYC by virtue of an adjudication
for misdemeanor assault in June 1999; adjudication for driving while
intoxicated in May 2002; and adjudication for criminal trespass in September
2002.  The court found that G.M.=s need for rehabilitation, and the protection of himself and
the public all required that the probation department=s recommendation of commitment to TYC
be followed.  It also found that it was
in G.M.=s best interest to be placed outside
his home because his parents do not adequately supervise, control or discipline
him, nor does he lend himself to discipline, that reasonable efforts had been
made to keep him in his home and to make it possible for him to return home,
and that he was not attending school and needed to enroll in a continuous
education program.  The court also found
that there are no community-based intermediate sanctions available to
adequately address G.M.=s needs, that the gravity of the offense
and his prior record required his confinement in a secure facility, and that
G.M.=s needs and status justified a
deviation from the sanction guideline levels.

Sufficiency
of the evidence to support disposition

In two points of error, G.M.
challenges the legal and factual sufficiency of the evidence used to justify
his commitment to the Texas Youth Commission. 
In particular he asserts that the community-based intermediate sanction
of Challenge Boot Camp was appropriate and was not available to him solely
because he was not a legal resident of the U.S. 
Finding this was only one of several reasons for deviating from the
sanction guidelines, we affirm.

Standard of review

When challenging the factual and
legal sufficiency of evidence to support an offense, the appellate court
applies a reasonable doubt standard for the finding of delinquency in the light
of a criminal proceeding.  In re L.R., 67 S.W.3d 332, 338 (Tex. App.--El Paso 2001, no
pet.).  We do not disturb the
juvenile court=s disposition order in the absence of
abuse of discretion.  In
re M.A.C., 999 S.W.2d 442, 446 (Tex. App.--El Paso 1999, no pet.).













Juvenile courts are vested with broad
discretion in determination of suitable disposition of children involved in
delinquent conduct.  In
re C.J.H., 79 S.W.3d 698, 702 (Tex. App.--Fort Worth 2002, no pet.).  Abuse of discretion does not occur where
there is some evidence of substantive and procedural proof to support the trial
court ruling.  Id.  This is especially true in hearings which
involve disposition, and absent an abuse of discretion, the appellate court
will not disturb the juvenile court=s ruling.  See In re E.R.L, No. 08-02-00259-CV,
2003 WL 21290917, at *4 (Tex. App.--El Paso June 5, 2003, no pet. h.).  We review dispositions using a two-pronged
analysis:  (1) did the trial court have sufficient
information in order to exercise its discretion; and (2) did the trial court
commit error in its application.  Id.  We use traditional sufficiency of the
evidence standards to answer the first question, then
continue to determine whether the trial court=s decision was reasonable.  Id.; In re L.R.,
67 S.W.3d at 338; In re M.A.C., 999 S.W.2d at 446.  The question is whether the trial court acted
without reference to guiding rules or principles, not whether in the opinion of
the appellate court the facts present an appropriate case for the trial court=s action.  In re L.R., 67 S.W.3d at 338; In re
M.A.C., 999 S.W.2d at 446.  Our
review is in conformance to the Texas Family Code section 54.04(i) and the explicit considerations it commands.[1]  Tex. Fam. Code Ann. ' 54.04(i) (Vernon 2002); In
re L.R., 67 S.W.3d at 338; In re T.K.E., 5 S.W.3d 782, 784
(Tex. App.--San Antonio 1999, no pet.); In re M.A.C., 999 S.W.2d at 446.

Factual sufficiency

Factual sufficiency requires the
appellate court=s examination of all the evidence to determine Awhether the finding . . . is so
against the great weight and preponderance of the evidence as to be manifestly
unjust.@ 
In re L.R., 67 S.W.3d at 339.

In asserting factual insufficiency,
G.M. argues that, but for his undocumented alien status, he would have been
recommended for Challenge Boot Camp.  We
find no evidence that supports this assertion. 
It is true that the boot camp program offers behavior modification,
substance abuse and educational programs, as does the TYC, and the boot camp is
in the community.  However, Challenge
Boot Camp does not offer citizenship classes, while TYC does offer such
classes, and G.M. would benefit from these. 
The Texas Youth Commission offers vocational training which would allow
G.M. to gain skills necessary to provide for his two children; boot camp does
not offer vocational training.  Most
importantly, the TYC offers after-care services when G.M. returned to his home environment, which are not available in the boot camp
program.   The probation department
stated this after-care was Acritical@ to his rehabilitation.  
Further, G.M. has had the opportunity to participate in many
community-based programs, and none have been successful in changing his
delinquent behavior.








G.M.=s case was staffed by the probation
department through its top officials: 
the senior probation officer, senior officer, director of probation
services, and deputy chief probation officer. 
All were in agreement with this course of action.  Even G.M.=s father acquiesced in the probation
department=s recommendation.  We find that the trial court had ample
evidence upon which to make the disposition, that the weight of the evidence
supports a finding that the Texas Youth Commission would best suit G.M, and the
great weight and preponderance of the evidence does not support G.M.=s assertion that, but for his alien status, his disposition
would not have been TYC.  Finally, we
find that the trial court did not err in applying the facts before it in a
reasonable manner.  G.M.=s first point of error is overruled.

Legal sufficiency

 
We find legal sufficiency if there is more than a scintilla of evidence
to support the finding and disregard all evidence and inferences to the
contrary.  In re
L.R., 67 S.W.3d at 339.  For
the reasons discussed in our analysis of G.M.=s first point of error, we find there
was legally sufficient evidence to support the trial court=s disposition.  We overrule Point of Error Two.

Conclusion

For the foregoing reasons, the
judgment of the trial court is affirmed.

 

SUSAN
LARSEN, Justice

August 14, 2003

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.











[1]Tex. Fam. Code Ann.
' 54.04(i)
(Vernon 2002):

(i) If
the court places the child on probation outside the child=s home or commits the child to the
Texas Youth Commission, the court:

(1) shall include in its order its
determination that:

(A) it is in the child=s best interests to be placed outside
the child=s home;

(B) reasonable efforts
were made to prevent or eliminate the need for the child=s
removal from the home and to make it possible for the child to return to the
child=s home;
and

(C) the child, in the
child=s home,
cannot be provided the quality of care and level of support and supervision
that the child needs to meet the conditions of probation; and

(2) may approve an administrative
body to conduct permanency hearings pursuant to 42 U.S.C. Section 675 if
required during the placement or commitment of the child.