COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )

                                                                              )             
No. 08-02-00308-CV

                                                                              )

                                                                              )                 Appeal from the 

IN THE MATTER OF J.B.D., A
Juvenile              )

                                                                              )              
65th District Court

                                                                              )

                                                                              )         
of El Paso County, Texas

                                                                              )

                                                                              )                 (TC# 0200680)

                                                                              )

 

MEMORANDUM  OPINION

 

J.B.D., a
juvenile, appeals from a disposition order committing him to the Texas Youth
Commission.  On appeal, J.B.D. challenges
the legal and factual sufficiency of the evidence to support the trial court=s findings.  We affirm.

On May 21, 2002,
J.B.D. was adjudicated for engaging in delinquent conduct based on his written
stipulation, admitting to the third-degree felony offense of possession of more
than five but less than 50 pounds of marijuana in violation of Texas Health
& Safety Code ' 481.121(b)(4),
as alleged in the State=s
First Amended Petition Based on Delinquent Conduct.  The trial court held a disposition hearing on
June 11, 2002.  An El Paso County
probation officer was the only witness to testify at the disposition
hearing.  At the conclusion of the
hearing, the trial court ordered J.B.D. to be committed to the Texas Youth
Commission.  








In two related
issues, J.B.D. argues that the evidence is legally and factually insufficient
to support the trial court=s
order that he be committed to the Texas Youth Commission.   Specifically, J.B.D. asserts that the State
failed to present legally or factually sufficient evidence to support the trial
court=s
findings that:  (1) it was in J.B.D.=s best interest to be placed outside
his home; (2) that reasonable efforts were made to prevent or eliminate the
need for J.B.D.=s removal
from the home and to make it possible for him to return to his home; and (3)
that J.B.D., in his home, cannot be provided the quality of care and level of
support and supervision that he needs to meet the conditions of probation.

Standard
of Review

Juvenile courts
have broad discretion in determining the suitable disposition for a child who
has been found to have engaged in delinquent conduct.  In re L.R., 67 S.W.3d 332, 338
(Tex.App.--El Paso 2001, no pet.). 
Absent an abuse of discretion, we will not disturb the juvenile court=s determination.  Id. 
In conducting this review, we apply a two-pronged analysis: (1) Did the
trial court have sufficient information upon which to exercise its discretion;
and (2) Did the trial court err in its application of discretion?  Id. 
The traditional sufficiency of the evidence review, articulated below,
comes into play when considering the first question.  Id. at 338.  The reviewing court then proceeds to
determine whether, based on the elicited evidence, the trial court made a reasonable
decision or whether it is arbitrary and unreasonable.  Id. 
The question is not whether, in the opinion of the reviewing court, the
facts present an appropriate case for the trial court=s
action, but whether the court acted without reference to any guiding rules and
principles.  Id. 








In considering the
legal insufficiency point, we consider only the evidence that tends to support
the trial court=s
findings and disregard all evidence and inferences to the contrary.  In re C.J.H., 79 S.W.3d 698, 703
(Tex.App.--Fort Worth 2002, no pet.); In re L.R., 67 S.W.3d at 339.  If more than a scintilla of evidence exists
to support the questioned finding, the legal insufficiency point fails.  In re L.R., 67 S.W.3d at 339.

In reviewing  factual sufficiency, we examine all of the
evidence in a neutral light to determining whether the finding in question is
so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust.  In re M.A.C., 999
S.W.2d 442, 446 (Tex.App.--El Paso 1999, no pet.).  We may not pass upon the witnesses= credibility nor substitute our
judgment for that of the jury, even if the evidence would clearly support a
different result; rather, if competent evidence of probative force supports the
challenged finding, we will sustain it.  In
re L.R., 67 S.W.3d at 339.

J.B.D.=s adjudication for the third-degree
felony offense of possession of over five but less than 50 pounds of marijuana,
in violation of Section 481.121(b)(4) of the Texas Health & Safety Code,
made J.B.D. eligible for consideration for placement in the Texas Youth
Commission pursuant to Section 54.04(d)(2) of the Texas Family Code.  With respect to a juvenile court=s discretion in making an appropriate
disposition, Section 54.04(i) of the Texas Family Code provides:

If the court places
the child on probation outside the child=s
home or commits the child to the Texas Youth Commission, the court:

 

(1)        shall include in its order its
determination that:

 

(A)       it is in the child=s
best interests to be placed outside the child=s
home; 

 

(B)       reasonable efforts were made to prevent
or eliminate the need for the child=s
removal from the home and to make it possible for the child to return to the
child=s home;
and 








(C)       the child, in the child=s home, cannot be provided the qualify of
care and level of support and supervision that the child needs to meet the
conditions of probation . . . .

 

Tex.Fam.Code
Ann. '54.04(i)(Vernon
2002).

Sufficiency
of the Evidence

At the June 11,
2002 disposition hearing, one witness was called to testify, Carmen Sanchez, a
probation officer with the El Paso County Juvenile Probation Department.  According to Ms. Sanchez=s testimony and information in the
State=s
pre-disposition report, admitted into evidence at the hearing, sixteen-year-old
J.B.D. is a Canadian citizen, who was born in Zacatecas, Mexico.  J.B.D.=s
parents met twenty-one years ago in Mexico and married in 1982.  His parents separated nine years ago due to
the father=s
drinking problem and his physical abuse towards the family.  J.B.D. is one of nine children from the
marriage.  The four eldest, ages seventeen
to twenty-one, live on their own.  The
three youngest, ages nine to fourteen, are under the care of Canada=s Family and Children Services and
reside in foster homes.  Only one of
J.B.D.=s
siblings, a younger brother, resides with his mother in Canada.  The father=s
whereabouts are unknown, but he is believed to be in Zacatecas, Mexico.  J.B.D. has no known family in the United
States.








J.B.D. last
attended school at University Heights High School in Canada.  He was expelled from school in the tenth
grade due to his absences and his behavior. 
J.B.D. had been taking special education classes and was one year behind
in his schooling as he had failed the tenth grade.  Prior to January 2002, J.B.D. was residing in
a foster home in Canada.  Upon his
release, J.B.D. lived with his mother in Ontario, Canada.  In a telephonic interview with the mother,
she informed the El Paso Juvenile Probation Department that J.B.D. does not
abide by her rules at home.  J.B.D.=s mother advised the Department that
she attempts to control him, but he does not listen to her.  J.B.D. does not always comply with his nine o=clock curfew and sometimes would return
home around ten or eleven o=clock.  While residing in Canada, J.B.D. was using
alcohol and drugs, which he bought or was provided by his friends.

J.B.D. informed
Ms. Sanchez that his mother had given permission for him to visit his relatives
in Cuahtemoc, Chihuahua, Mexico.  A
family friend gave J.B.D. a ride to Cuahtemoc, Chihuahua where he spent one
week before deciding to leave because he did not want to help his relatives
with ranch work.  J.B.D. then left the
ranch where his relatives live and went to the city.  He spent the night on the street.  On the following day, J.B.D. approached a man
passing by and asked him where he could get marijuana.  The man gave J.B.D. marijuana and asked him
if he wanted to cross drugs into the United States and J.B.D. immediately
agreed.  J.B.D. was given money for food
and stayed in a hotel for two weeks, waiting for his driver=s license.  J.B.D. was then taken to Ciudad Juarez where
he spent the night.  The following
morning, April 30, 2002, J.B.D. was given a vehicle loaded with marijuana and
$500 for travel expenses.  J.B.D. drove
the vehicle to the Americas Port of Entry where he was detained upon discovery
of marijuana in the vehicle=s
fuel tank.  J.B.D. was then turned over
to the El Paso Sheriff=s
Department.








In the course of
her investigation, Ms. Sanchez contacted the police department in Canada who
informed her that J.B.D. has a runaway report and is considered a habitual
runaway.  With respect to placement
programs in Canada, Ms. Sanchez testified that the Canadian consulate referred
her to International Social Services. 
The agency advised the Department that they do not work with juveniles
involved in the juvenile justice system and they would not be able to provide
any services to J.B.D.  Ms. Sanchez also
contacted the Mexican Consulate and was told they could not get involved
because J.B.D. is considered a Canadian citizen.

Ms. Sanchez stated
that the Department did not consider sending J.B.D. back to his mother because
she has not been cooperative.  Ms.
Sanchez believed there was no way to work with the family and J.B.D.  In the pre-disposition report, Ms. Sanchez
also noted that it was the Department=s
belief that J.B.D.=s mother
contributed to his delinquency and has not been providing adequate supervision
of her son.  Further, J.B.D.=s mother had shown no interest in her
son=s rehabilitation nor an interest in her
son=s well-being.

In her
pre-disposition report and at trial, Ms. Sanchez stated that there was no 

out-of-home placement option
available for J.B.D. because he is a Canadian citizen without legal status in
the United States and placement facilities will not accept him for this
reason.  Further, the Department did not
consider a foster home placement because J.B.D. must be held accountable for
his actions, needs substance abuse treatment, and would need parental supervision
and contact.  The Department cannot
release J.B.D. to a foster home in Canada because Family and Children Services,
the U.S. equivalent for child protective services, no longer has jurisdiction
over a juvenile once he reaches age sixteen. 
Since J.B.D. is sixteen years old, he is ineligible to be placed in a
foster home in Canada.  Ms. Sanchez
stated that if J.B.D. was released, the Department would have to release him
back to the Immigration and Naturalization Service.








The State also
introduced two psychological evaluations of J.B.D.  Dr. Guido Barrientos evaluated J.B.D. on May
31, 2002 and determined that J.B.D. was functioning within the range of high
borderline intelligence.  J.B.D.=s educational assessment revealed that
he has severe deficits in reading, spelling, and math skills.  In Dr. Barrientos=
opinion, J.B.D.=s
drop-out status and substance abuse strongly suggested that he is inadequately
supervised at home.  Dr. Barrientos
recommended an out-of-home placement in a structured program of behavior
modification, alcohol and drug counseling, and work on his education.  On June 5, 2002, Dr. Sriya De Silva also
conducted a psychological evaluation of J.B.D. and determined that he had a
conduct disorder and abused cannabis and alcohol.  Dr. De Silva recommended individual and group
therapy.

Ms. Sanchez
informed the court that it was the recommendation of the El Paso County
Juvenile Probation Department that J.B.D. be committed to the care, custody,
and control of the Texas Youth Commission. 
It was the Department=s
opinion that J.B.D. is in need of a highly structured and secured environment
that his mother has not been able to provide for her son.  Ms. Sanchez testified that the Texas
Youth Commission was a structured and secure facility, which would provide
J.B.D. with an education, independent living skills, behavior modification, and
drug and alcohol counseling.  Ms. Sanchez
also stated that her recommendation was in the best interest of J.B.D. and the
community.








Based on the
evidence presented at the hearing, the trial court found that J.B.D. was in
need of rehabilitation and that the protection of the public and of the
juvenile required that disposition be made. 
The trial court ordered J.B.D. to be committed to the Texas Youth
Commission, finding that it was in J.B.D.=s
best interest to be placed outside his home for the reason that the juvenile
has no parents to supervise, control, or discipline him, and J.B.D. does not
lend himself to suitable supervision, control, or discipline.  The court found that reasonable efforts had
been made to prevent or eliminate the need for J.B.D. to be removed from his
home and make it possible for him to return home.  Further, the court stated that its reasons
for the disposition, namely that:  J.B.D.
needs to be held accountable and responsible for his delinquent behavior;
J.B.D. poses a risk to the to the safety and protection of the community if no
disposition is made; there are no community-based intermediate sanctions
available that adequately address the needs of the juvenile or adequately protect
the needs of the community; and the gravity of the offense requires that the
juvenile be confined to a security facility.

In Issues One and
Two, J.B.D. asserts that there is no evidence in the record to establish that
reasonable efforts were made to prevent or eliminate the need for his removal
from the home.  J.B.D. also contends that
the court=s finding
that his home cannot provide him with the support and supervision needed to
meet the conditions of probation is contrary to the great weight and
preponderance of the evidence.

The evidence in
the record shows that J.B.D.=s
mother has not been providing adequate supervision of her son, which has
contributed to his delinquency, his drop-out status, and his alcohol and
substance abuse.  Based on a referral
from the Canadian Consulate, Ms. Sanchez contacted International Social
Services, which informed her that they do not work with juveniles involved with
the juvenile justice system.  Ms. Sanchez
also contacted Family and Children Services, a Canadian governmental agency,
which informed her that it had no jurisdiction to provide foster care to J.B.D.
because of his age.  J.B.D.=s lack of legal status in the United
States makes him ineligible for out-of-home placement programs.  The Department did not consider a foster home
placement given J.B.D.=s
need for substance abuse treatment and the lack of parental involvement in his
rehabilitation.  It was the Department=s belief that J.B.D. is in need of a
highly structured and secured environment, which the Texas Youth Commission can
provide along with an education, independent living skills, behavior
modification, and drug and alcohol counseling.








After reviewing
the evidence admitted at the hearing, we find there was sufficient evidence to
support the trial court=s
findings that:  (1) it was in J.B.D.=s best interest to be placed outside
his home; (2) that reasonable efforts were made to prevent or eliminate the
need for J.B.D.=s removal
from the home and to make it possible for him to return to his home; and (3)
that J.B.D., in his home, cannot be provided the quality of care and level of
support and supervision that he needs to meet the conditions of probation.  Further, we find that the trial court=s findings are not so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  Finding no abuse of discretion, we overrule
Issues One and Two.

For the reasons
stated above, we affirm the trial court=s
judgment of commitment. 

 

 

October
2, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.