

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00505-CV

_____

IN THE MATTER OF E.P.

---

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-123190-24

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

In this appeal, E.P. (Elizabeth)[1] contends that the juvenile court abused its discretion by committing her to the Texas Department of Juvenile Justice (TJJD) to serve an indeterminate sentence because the trial court's decision was based on insufficient evidence. We affirm.

## Background

After the State filed a petition alleging that Elizabeth had engaged in delinquent conduct by committing ten offenses, she entered into a Stipulation of Evidence and Judicial Confession, in which she admitted committing four of the offenses— attempting to assault a peace officer, assaulting a public servant, retaliating against a public servant, and sexual coercion—and therefore having engaged in delinquent conduct. *See* Tex. Penal Code Ann. §§ 15.01, 21.18, 22.01(b)(1) & (b-2), 36.06(c); *see also* Tex. Fam. Code Ann. §§ 51.03(a)(1), 56.01(n). However, Elizabeth did not agree to a particular disposition based on her admitted conduct.

After a disposition hearing, the trial court found that it was in Elizabeth's best interest to be placed outside her home, that reasonable efforts had been made to prevent or eliminate the need for her to be removed from her home, that she could not be provided the quality of care and level of supervision in her home needed to meet any community-supervision conditions, and that she has behavioral health or

---

[1]We use a pseudonym to refer to the appellant. *See* Tex. R. App. P. 9.8(c).

other special needs that cannot be met with community resources. The trial court also found that it was in Elizabeth's best interest to commit her to TJJD's care, custody, and control.[2] Therefore, the trial court ordered that Elizabeth be committed to TJJD's care, custody, and control "[f]or an indeterminate period of time not to exceed the time when [she turns] 19 . . . or until duly discharged in compliance with" Chapter 61 of the Human Resources Code. Elizabeth has appealed the trial court's decision to commit her to TJJD.

**Standard of Review**

A juvenile court has considerable discretion to determine the suitable disposition for a child who has been adjudicated as having engaged in delinquent conduct. *In re D.T.*, No. 02-20-00312-CV, 2021 WL 5028769, at *1 (Tex. App.—Fort Worth Oct. 28, 2021, no pet.) (mem. op.). A juvenile court abuses that discretion when it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *Id.* It does not abuse its discretion simply by basing its decision on conflicting evidence. *Id.* Thus, we may not conclude that a juvenile court abused its discretion so long as some evidence of a substantive and probative character exists to support its decision. *Id.* However, a juvenile court abuses its discretion if it orders a child committed to TJJD without evidence to support the statutorily required

---

[2]The trial court further found that there are no facilities, services, or programs available to meet Elizabeth's needs, that her educational needs can be met by TJJD, and that she had committed four felony offenses.

predicate findings. *See In re J.C.*, No. 02-18-00038-CV, 2018 WL 2701613, at *2 (Tex. App.—Fort Worth June 5, 2018, no pet.) (mem. op.).

In conducting our review of a disposition order, we ask two questions: (1) did the juvenile court have sufficient information upon which to exercise its discretion, and (2) did it err in its application of discretion? *D.T.*, 2021 WL 5028769, at *1. In doing so, we apply the civil standards of review for legal and factual evidentiary sufficiency. *In re B.R.*, No. 02-19-00328-CV, 2020 WL 3969556, at *2 (Tex. App.—Fort Worth June 18, 2020, no pet.) (mem. op.).

When determining whether legally sufficient evidence supports the finding under review, we consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *In re M.E.*, No. 02-14-00051-CV, 2014 WL 7334990, at *2 (Tex. App.—Fort Worth Dec. 23, 2014, no pet.) (per curiam) (mem. op.). Anything more than a scintilla of evidence supporting a finding renders the evidence legally sufficient. *Id.*

When reviewing whether factually sufficient evidence supports a finding, we set aside the finding only if, after considering and weighing all the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak or so contrary to the overwhelming weight of all the evidence that the answer should be set aside and a new trial ordered. *Id.*

## Applicable Law

After making the required findings that a hearing to determine disposition should occur, a trial court must either (1) place the child on probation at home or outside the home or (2) commit her to TJJD. *See* Tex. Fam. Code Ann. § 54.04(d)(1)–(2). The trial court may not place a child on probation outside the child's home or commit a child to TJJD without finding that (1) it is in the child's best interest to be placed outside the child's home; (2) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and (3) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. *Id.* §§ 54.04(c), (i).[3] A trial court is not required to exhaust all possible alternatives before committing a juvenile to TJJD custody. *In re R.R.*, Nos. 02-24-00360-CV, 02-24-00361-CV, 2025 WL 421222, at *5 (Tex. App.—Fort Worth Feb. 6, 2025, no pet.) (mem. op.); *In re K.H.*, 682 S.W.3d 567, 576 (Tex. App.—Houston [1st Dist.] 2023, pet. denied).

As noted above, the trial court here made all the findings required to commit Elizabeth to TJJD for an indeterminate sentence.

---

[3]To place a child in TJJD custody, Section 54.04013 requires yet another finding: that the child has behavioral health or other special needs that cannot be met with the resources available in the community. Tex. Fam. Code Ann. § 54.04013; *see id.* § 54.04(d)(2); *In re R.S.*, No. 02-22-00165-CV, 2022 WL 17494602, at *1–3 (Tex. App.—Fort Worth Dec. 8, 2022, no pet.) (mem. op.).

## Sufficiency

Elizabeth argues that because she had never been offered, or ordered to complete, any rehabilitative services through Tarrant County Juvenile Services (the Department), the evidence is "legally and factually insufficient to support the trial court's finding[] that reasonable efforts were made to prevent or eliminate the need for her removal from home and to make it possible to return home."

### Evidence

The evidence showed that Elizabeth had been accused of, and pleaded guilty to, threatening to publish a sexually explicit video unless the victim paid her. Elizabeth's probation officer[4] testified that she was at high risk for sex trafficking, had previously run away from home, and had a history of substance abuse.[5] She had many unexcused absences and tardies at school and was behind one grade level.

Although Elizabeth was supposed to live with her mother according to a March 2024 court order,[6] she had lived with her father for the four months before

---

[4]There is no probation order in the trial court record. This witness testified that he was the Department officer supervising Elizabeth at the time of trial.

[5]Elizabeth's probation officer testified that at some point while her case was pending, Elizabeth tested positive for marijuana use. Later, the trial court indicated that the positive test occurred a little over two weeks before trial.

[6]Elizabeth argues that her probation officer and the trial court merely surmised that Elizabeth's living with her father was in violation of a court order and that, in considering this fact significant, the trial court "partially based its decision . . . on incomplete or inaccurate evidence." Elizabeth did not object to her probation officer's testimony to this effect. Additionally, even if the trial court's orders in her

trial. Her probation officer was concerned about the supervision she received at either parent's house[7] but thought that Elizabeth's mother "would be able to provide adequate supervision." Elizabeth's probation officer did not believe it was in her best interest to be placed outside the home: "I believe that she deserves a chance on probation. We haven't exhausted all resources in the community. And we have programming, and staff available to work with her and her family in the community."

However, Elizabeth's probation officer also testified that she had previously been to private inpatient treatment for her mental health and had also been provided private substance-abuse treatment. She was in counseling and took medication.

The probation officer did agree that reasonable efforts had been made to prevent or eliminate the need for Elizabeth to be removed from her home, but he thought that she could be provided the quality of care and level of supervision in her home needed to meet any community-supervision conditions—particularly with her

---

parents' divorce did not prohibit her from living full-time with her father, the trial court had before it other evidence indicating that her father, as well as her mother, was unable to adequately supervise Elizabeth—in part due to her parents' inability to cooperate and due to their personal issues—and that her parents and their situation had enabled at least some of Elizabeth's behavior and outlook.

[7]The social history, of which the trial court took notice, confirmed the unstable nature of Elizabeth's home life, particularly her parents' inability to cooperate or adequately supervise her. Although Elizabeth contends that the social history was not properly before the trial court because it was not offered or admitted into evidence, the Family Code does not require that the trial court admit it into evidence before considering it. *See In re D.W.D.*, No. 2-03-015-CV, 2004 WL 868681, at \*1 (Tex. App.—Fort Worth Apr. 22, 2004, no pet.) (mem. op.); *see also* Tex. Fam. Code Ann. § 54.04(b).

mother. The probation officer believed that Elizabeth's needs could be met in the community. He recommended as a disposition that Elizabeth

> be placed on a community-based term of supervision not to exceed her 18th birthday[,] . . . participate in the Family Partnership Program, [and] undergo a mental health assessment. As part of that assessment, they will also do a drug abuse assessment. If further drug abuse assessments are needed, they will then make referrals for those.

Elizabeth's probation officer testified that as probation conditions, she should be ordered to live with her mother and not be able to access social media.

On cross-examination, the probation officer agreed that the Department had provided Elizabeth "no services whatsoever."

On questioning by the trial court, the probation officer testified that Elizabeth had three Instagram accounts, a TikTok account, and a Snapchat account. The trial court also asked the probation officer how he could be confident that Elizabeth would not continue to use drugs when she had done so while the case was pending; the officer said, "I don't know that she will stop . . . ." Nevertheless, he explained that he had been able to engage Elizabeth's parents during the case and that they had been cooperative.

The trial court also questioned the probation officer about why the Department had not provided Elizabeth any services for the ten months the case had been pending. The probation officer explained that Elizabeth had never been in detention. She was first referred to the Department in October 2023, but according to the probation officer,

8

> We kept getting out[-]of[-]custody referral, after referral, after referral, and it continued to get referred to the prosecutor's office for consideration. . . . [W]e didn't get to disposition before a new set of offenses came in, and we waited to collect those, and then we got another batch, and another batch, and another batch.

Although the Department sent the cases to the District Attorney's office as they received referrals, no petition was filed until April 2024. During that time, the probation officer attempted to have Elizabeth voluntarily take a drug test; although Elizabeth's mother was amenable to Elizabeth's doing so, her father would not consent. The probation officer also attempted to have Elizabeth evaluated by law enforcement for possible human trafficking; again, although her mother was amenable, her father refused.

In assessing the disposition, the trial judge noted, "The referrals by the police and our juvenile probation department certainly gave notice to [Elizabeth] that she should be on heightened awareness of her behavior and the scrutiny that she would be under." He also noted,

> The fact that the parents are both willing to violate a standing court order, the fact that the parents are refusing to submit to human trafficking screenings even though they professed that they are concerned about human trafficking suspicions. The drug use and the lack of parenting that is going on for this child equates to this Court the lack of supervision to abide by what this Court's orders would be for conditions of probation. And that the child has behavioral health or other special needs that cannot be met with the resources available in the community. The fact that she runs away and does things that are morally reprehensible indicates to me . . . they have an absolute lack of supervision. The fact that they had awareness of her posting inappropriate . . . photographs of herself when she was underage, and they did not take appropriate measures where she continued to engage in

9

such behavior tells me the parents are disengaged, [they have] and a lack of even a reasonable amount of parenting skills to provide protection and rehabilitation for this child.

The trial court also found significant that Elizabeth did not seem to show any remorse for the sexual-coercion offense she had committed and that she might have continued to engage in the same behavior had she not gotten caught. The trial court found, in effect, that with "the retaliation case where [Elizabeth was] not accepting culpability [and had] doubled down, [the evidence indicates] that there is just no supervision for [her] available in the community."

**Application**

Contrary to Elizabeth's assertion, there is some evidence regarding the Department's efforts to assist her while the proceedings were pending. The Department had attempted to secure her parents' cooperation for drug testing and a human-trafficking evaluation. Additionally, Section 54.04(i)(1)(B) requires only that "reasonable efforts were made," and "it does not specify that those efforts must include services." *B.R.*, 2020 WL 3969556, at *6. Moreover, before a petition could be filed based on her original referral in October 2023—for assaulting a teacher—and while living with one or both of her parents,[8] she engaged in further assaultive behavior—against police officers—and continued to have access to and to use the

---

[8]Elizabeth contends that none of the evidence showed that she committed the ten alleged offenses in the State's petition while she was living with her father. This argument ignores the evidence in the social history report that the assaultive offenses occurred while she was living with her father.

social media that enabled the sexual-coercion offense. Based on the foregoing, we conclude that the evidence is legally and factually sufficient to support the trial court's reasonable-efforts finding; thus, we determine that the trial court did not abuse its discretion by placing Elizabeth outside her home. *See id.* at *7; *In re D.L.T.*, No. 03-06-0069-CV, 2008 WL 2736902, at *5 (Tex. App.—Austin July 9, 2008, no pet.) (mem. op.); *In re J.B.D.*, No. 08-02-00308-CV, 2003 WL 22283154, at *5 (Tex. App.—El Paso Oct. 2, 2003, no pet.) (mem. op.); *In re M.A.C.*, 999 S.W.2d 442, 448 (Tex. App.—El Paso 1999, no pet.).

Elizabeth stresses that her offenses were not violent. *See R.R.*, 2025 WL 421222, at *5 ("Generally, a trial court does not abuse its discretion by committing a juvenile to the TJJD 'when a delinquent juvenile has engaged in some type of violent activity that makes the juvenile potentially dangerous to the public.'" (quoting *K.H.*, 682 S.W.3d at 576)). Nevertheless, the details of her sexual-coercion offense exhibited a calculated cruelty and involved the use of her phone and social media, her access to and use of which—even at the time of trial—her parents had either been unable or unwilling to attempt to control. The assaultive offenses that Elizabeth also admitted committing were against a teacher and a police officer, and the social history indicated that she had, on other occasions, engaged in assaultive conduct against her parents and police officers.

Accordingly, we hold that the evidence was legally and factually sufficient to support the trial court's reasonable-efforts finding and, thus, that the trial court did

11

not abuse its discretion by committing Elizabeth to TJJD for an indeterminate sentence. We overrule her two issues.

## Conclusion

Having overruled Elizabeth's issues, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: May 8, 2025