COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-252-CV

 

 

IN THE MATTER OF J.L.C.                                                    APPELLANT

 

                                                                                                        

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








In two points, appellant
J.L.C., a minor child adjudicated delinquent, appeals the result of his
disposition hearing.  He complains that
the evidence presented at the hearing was factually insufficient to support the
trial court=s  finding that commitment was appropriate and
that the trial court erred by not allowing him to cross-examine the State=s complaining witness at the disposition hearing.  He does not challenge the adjudication of
delinquency.  We affirm.

BACKGROUND

The same underlying facts
were presented at both the adjudication and disposition hearings.  Michael Cummings, the complaining witness,
testified at both hearings.[2]

Adjudication Hearing

Michael testified that on
April 23, 2006, he was adjusting his lawn sprinkler when he saw four teenaged
girls attack another teenaged girl.  He
started towards them and passed Appellant, a sixteen-year-old male, who was
sitting on the back of a car in front of a nearby house and egging on the
attackers.  Michael testified that at his
approach, the girls broke off their assault and came towards him, shouted some
racial slurs at him, and told him that he was not their parent and to leave
them alone.








Michael testified that he had
only told the girls to leave the other one alone and that he did not hit
anyone.  He testified that Appellant ran
up to him and demanded to know if Michael wanted a Apiece@ of his
cousin, one of the attackers, or of Appellant. 
Michael testified that Appellant punched him in the left ear and knocked
him to the ground and that Appellant and the girls hit and kicked him and then
eventually retreated to the house Appellant had been sitting in front of.  A passing motorist called 911 for
Michael.  After Michael was examined by
paramedics, his wife, Theresa, took him to the hospital to treat his bruises,
lacerations, dislocated right elbow, and fractured radial bone. Michael
testified briefly at the adjudication hearing about his surgery and physical
therapy treatment.

Appellant=s thirteen-year-old cousin, one of the teenaged attackers, testified
that Michael got in the face of one of her other cousins, that Appellant came
to that cousin=s rescue,
and that Michael slapped Appellant, triggering the fight.  She admitted that she did not give this
statement to the police even after she found out that Appellant had gotten in
trouble.  Appellant disputed Michael=s testimony about the number of girls hitting Michael and who was hit
first.  He admitted that he had not given
any statement about Michael hitting him first until the adjudication hearing.  The judge adjudicated Appellant delinquent
for assault.  See Tex. Fam. Code Ann. ' 51.03 (Vernon Supp. 2006).

 

 

 

 








Disposition Hearing

The disposition hearing was
heard by a different judge.  At the
beginning of the hearing, the judge admitted Appellant=s social history report[3]
into evidence and asked Appellant when he had last used marijuana.  Appellant said, ANone since I=ve been in
trouble,@ and responded affirmatively when the judge asked, ASo you would be clean today?@  The judge requested a current
urinalysis.  The results came back
positive for marijuana.  When the judge
again asked Appellant when he last used drugs, Appellant replied, AI=d say about
three or four weeks ago.@








Michael gave the same
testimony as he had at the adjudication hearing, and provided additional
testimony about his out-of-pocket medical expenses that were not covered by his
insurance company, over $4,000 by the disposition hearing, and his physical
therapy.  Photographs of his injuries and
documentation of his medical bills were admitted.[4]  Theresa testified about the negative changes
the injury had wrought on their lives, including Michael=s subsequent paranoia about being alone in the front yard, their new
home security system, the amount of pain medication that Michael had to take,
and his difficulties in performing his job and daily activities like brushing
his hair and his teeth.

After the trial court heard
testimony from Appellant=s probation
officer, Tommy Irons, and Appellant=s parents and grandfather, it made the required findings[5]
and ordered that Appellant be committed to the Texas Youth Commission (ATYC@).  The trial court cited the following reasons
that it was in the best interest of Appellant and of society to commit him to
TYC for an indeterminate period of time:

(1)
There are no facilities, services or programs available which would meet the
needs of the child;

 








(2)
The Court finds that the educational needs of the child can be met by the Texas
Youth Commission;

 

3)
The child has been found by the COURT to have violated Section 22.01
(MISD) of the Texas Penal Code, on or about APRIL 23, 2006, and was
adjudicated delinquent on JUNE 13, 2006.

 

(4)
The child has been previously adjudicated delinquent [for two violations of
section 22.01, adjudicated on November 1, 2005 and July 13, 2005].[6]

 

FACTUAL SUFFICIENCY

In his first point, J.L.C.
complains that the evidence presented at the disposition hearing was factually
insufficient to support a finding that commitment was appropriate under section
54.04 of the Juvenile Justice Code. See Tex. Fam. Code Ann. ' 54.04(c), (i).

Standard Of Review








After a juvenile has been
adjudicated delinquent, the court has broad discretion to determine
disposition.  In re C.J.H., 79
S.W.3d 698, 702 (Tex. App.CFort Worth 2002, no pet.).  Such
disposition will not be disturbed absent abuse of that discretion.  See In re A.E.E., 89 S.W.3d 250, 256
(Tex. App.CTexarkana
2002, no pet.).  To determine whether the
trial court abused its discretion, we must decide whether the trial court acted
without reference to any guiding rules or principles; in other words, we must
decide whether the act was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241‑42 (Tex. 1985), cert. denied, 476 U.S. 1159
(1986).  Merely because a trial court may
decide a matter within its discretion in a different manner than an appellate
court would in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Id.








An abuse of discretion does
not occur where the trial court bases its decisions on conflicting
evidence.  In re Barber, 982
S.W.2d 364, 365 (Tex. 1998) (orig. proceeding). 
Furthermore, an abuse of discretion does not occur as long as some
evidence of substantive and probative character exists to support the trial
court=s decision.  Butnaru v. Ford
Motor Co., 84 S.W.3d 198, 211 (Tex. 2002). 
Whether there is factually sufficient evidence to support the trial
court=s findings is a relevant consideration in determining if the trial
court abused its discretion.  See
Beaumont Bank v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Tex. Dep=t of Health v. Buckner, 950 S.W.2d
216, 218 (Tex. App.CFort Worth
1997, no writ).  An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the finding should be set aside and a new trial
ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965); A.E.E., 89 S.W.3d at 256.  We are required to consider all of the
evidence in the case in making this determination, not just the evidence that
supports the finding.  Mar. Overseas
Corp. v. Ellis, 971 S.W.2d 402, 406‑07 (Tex.), cert. denied,
525 U.S. 1017 (1998).[7]  In conducting this review, we engage in a two‑pronged
analysis:  (1) Did the court have
sufficient information upon which to exercise its discretion, and (2) Did the
court err in its application of discretion? 
See In re M.A.C., 999 S.W.2d 442, 446 (Tex. App.CEl Paso 1999, no pet.).

Requirements Under Section 54.04(c)








In part of his first point,
Appellant argues that no evidence was presented to the trial court that would
support a finding that he was a danger to the public.  No disposition may be made unless (1) the
child is in need of rehabilitation or the protection of the public requires it,
and (2) no disposition placing the child on probation outside his home may be
made unless the court finds that the child, in his home, cannot be provided the
quality of care and level of support and supervision that he needs to meet the
conditions of the probation.  See Tex. Fam. Code Ann. ' 54.04(c).  Appellant does not
contest the trial court=s finding
that he was in need of rehabilitation. 
We discuss the findings required to place a child outside his home
below, under section 54.04(i)=s more detailed standard.  See
id. ' 54.04(i).

Protection of the Public

The trial court found that a
disposition was required for the protection of the public.  In addition to Michael=s testimony regarding the circumstances surrounding his injuries and
their severity, accompanied by photographs of his injuries and documentation of
his medical expenses, and Theresa=s testimony about how the injury to Michael=s arm had affected his home and work life, the trial court heard
testimony from Appellant=s parents,
grandfather, and probation officer.








Irons testified that
Appellant had been a part of the Juvenile Probation system since May 2005, but
only on Irons=s caseload
since January 2006. Appellant had two prior adjudications for assault with
bodily injury, both involving school‑related fights, which Irons had not
investigated with school officials. 
Irons indicated that he was Avaguely@ familiar
with the two prior assaults.

The first assault occurred in
May 2005 and Appellant was placed on six months= probation, July 13, 2005 to January 17, 2006, and ordered to attend
counseling for anger control and to perform community service.  He then committed a second assault[8]
for which he received another six‑month probation and was ordered to the
Tarrant County Advocate Program (ATCAP@) and the
Juvenile Justice Alternate Education Program (AJJAEP@).








The month before his assault
on Michael, Appellant successfully completed JJAEP and his TCAP was
discontinued.  Appellant was on probation
for the second assault when he assaulted Michael and tested positive for marijuana
after a urinalysis on May 8, 2006.[9]  Irons testified that since Appellant had been
on his caseload for the offense against Michael, there had been no violations
on his electronic monitor.  He also
testified that Appellant was doing well both in school and in his behavior with
his parents, attending church, Aand pretty much follow[ing] their rules.@  He reported that Appellant was
currently attending a regular high school, had regular school attendance, and
had no history of behavior problems at school since January 2006.








Appellant=s grandfather, a pastor, testified that Appellant attended his church
on a regular basis, sang in the choir, and was Aa good kid.@  He testified that he did not know anything
about the fight allegations and that all he knew was that A[Appellant] had got in some scrapes at the school,@ but that he did not know the depth of them.  He testified that he was shocked when he
heard Appellant had problems with marijuana, Abecause that=s not his
nature.@  He testified that he did agree
that Appellant had a temper,  but that Aeverybody has a temper if we=re provoked.@  He added, AI talked to [Appellant], and I=m surprised at some of the attitude[s] he held, things that he=s done.@

Appellant=s father testified that he knew about the fights at school, but that Awhen you=re provoked,
anything can happen,@ and that Ayou=re not going
to sit up there and let nobody hit you for no reason.@  He also testified that he did
not know about Appellant=s marijuana
use.  Appellant=s mother testified that Appellant is Avery respectful to elders or whatever,@ that she had no problems with him, and that she did not know about
his drug use.  She also intimated that
Appellant had been defending his cousin against Michael and denied that his two
previous offenses were assaults.








After reviewing the entire
record, we conclude that the trial court had sufficient information upon which
to exercise its discretion with regard to whether Appellant presented a danger
to the public and that it did not err in its application of that discretion.  See M.A.C., 999 S.W.2d at 446.  The trial court could have reasonably found
Michael and Theresa=s testimony
about Michael=s injuries,
the circumstances surrounding the injuries, and the subsequent changes to their
lives more credible than Appellant=s grandfather=s assertion
that Appellant was Aa good kid@ who had gotten into a few Ascrapes.@  See Downer, 701 S.W.2d at 241‑42.  It was also in the trial court=s discretion to decide whether Irons=s and Appellant=s parents= testimony about Appellant=s behavior at home provided a sufficient basis to conclude that
Appellant would behave the same way outside of his parents= household.  In light of Michael=s testimony and Appellant=s assault history, we cannot say that the evidence supporting the
trial court=s finding
that a disposition was required for the protection of the public was weak or
that the evidence to the contrary was overwhelming.  See Tex.
Fam. Code Ann. ' 54.04(c);
Garza, 395 S.W.2d at 823. 
Therefore, because there was evidence to support the trial court=s finding that a disposition was necessary to protect the public, the
trial court did not abuse its discretion. 
See Butnaru, 84 S.W.3d at 211; Barber, 982 S.W.2d at
365.  We overrule this portion of
Appellant=s first
point.

Requirements Under Section 54.04(i)








Appellant also claims that no
evidence was presented to the trial court that would support a finding that his
need for rehabilitation could not take place while living at home.  To commit a child to TYC, the trial court
must determine: (1) that it is in the child=s best interests to be placed outside his home, (2) that reasonable
efforts were made to prevent or eliminate the need for the child=s removal and to make it possible for the child to return to his home,
and (3) that the child, in his home, cannot be provided the quality of care and
level of support and supervision that he needs to meet the conditions of
probation.  See Tex. Fam. Code Ann. ' 54.04(i)(1)(A)-(C).  The trial
court made all three findings in its order of commitment.

 

Appellant=s Best Interests

Appellant was adjudicated
delinquent for the third time, for his third assault, which he committed while
he was on probation for his second assault. He committed his second assault
while on probation for his first assault. 
He tested positive for marijuana after he committed the third assault
and again at the disposition hearing. 
The assaults and probation violations occurred while he lived with his
parents, and both of his parents and his grandfather testified that they were
unaware of his drug use and dismissed or defended his assault history.  Irons did not specifically testify about
whether it was in Appellant=s best interests to remain in his parents= home, although he did testify that Appellant had been living with his
grandfather because the electricity had been turned off at his parents= home prior to the hearing.








The trial court heard
Appellant=s parents
and grandfather testify and could have concluded that they underestimated
Appellant=s problems
and could not provide the structure and supervision Appellant would need to
remain in either his parents= or grandfather=s
homes.  Given his assault history and the
extent of Michael=s injuries,
there was certainly some evidence of probative force to support a finding that
Appellant=s best
interests would be placement outside his home. 
See In re C.G., 162 S.W.3d 448, 452 (Tex. App.CDallas 2005, no pet.).  And in
the Juvenile Justice Code, the best interests of children who engage in serious
and repeated delinquent conduct are superseded to the extent they conflict with
public safety.  See In re J.P.,
136 S.W.3d 629, 633 (Tex. 2004).  After
reviewing all of the evidence, we cannot say that the trial court=s finding was so against the great weight and preponderance of the
evidence as to be manifestly unjust, or that it abused its discretion by making
this finding. See Butnaru, 84 S.W.3d at 211; Barber, 982 S.W.2d
at 365.

Reasonable Efforts

The trial court found that
reasonable efforts had been made to prevent or eliminate the need for the
removal and to make it possible for Appellant to return home.  See Tex.
Fam. Code Ann. '
54.04(i)(1)(B).  Appellant complains that
the evidence failed to support this finding and argues that Irons=s testimony established that alternative programs apart from
commitment to TYC were available.

In addition to Irons=s testimony previously discussed above, Irons=s summary and assessment in the social history stated:

[Appellant]
is a 16 year old juvenile appearing before the Juvenile Court for the 3rd
time.  This matter presently before the
Court involves his 5th referral to this department and 3rd for Assault.








 

[Appellant] has received
Anger Management through the TCAP Program. [Appellant] had voiced his own
concerns about his temper.  [Appellant]
would be appropriate for traditional probation, to attend counseling with
Family Preservation[,[10]]
and to have a drug assessment.   

 








With regard to this
recommendation, when asked if he was aware of the specifics of the prior
assault cases, Irons stated that he Awould have to read the reports to see exactly what happened,@ and indicated that he was satisfied with his assessment as far as
recommending traditional probation for Appellant.  He testified that Appellant had not
previously been assessed for Family Preservation and that Appellant was doing
well in school and in his behavior with his parents.

Appellant cites In re A.S.
to support his reasonable efforts argument. 
See In re A.S., 954 S.W.2d 855 (Tex. App.CEl Paso 1997, no writ). 
However, in A.S., the court observed that the record contained no
evidence to establish that reasonable efforts had been made to prevent or
eliminate the need for A.S.=s removal from the home.  Id.
at 862‑63.  Here, the record shows
that Appellant had already completed JJAEP and TCAP when he tested positive for
marijuana and violated probation by committing his third assault.  Therefore, the reasoning behind the reversal
in A.S. is inapposite.  Id.
at 857, 862-63.








Appellant also refers to In
re N.S.D., a case in which the probation officer testified that local
services were available which had not been previously used and that it was his
opinion that the child could have been rehabilitated using those previously
unused local services.  In re N.S.D.,
555 S.W.2d 807, 809 (Tex. Civ. App.CEl Paso 1977, no writ). 
However, in N.S.D., that was the only testimony in the record and
it provided no basis to support the trial court=s given commitment reason, which was that there were no services which
had not been used in the past within the community to effectuate the juvenile=s rehabilitation.  Id. at
809.  Here, the finding was not that
there were Ano services,
which have not been used in the past, within the community to effectuate the
juvenile=s rehabilitation,@ but rather that A[t]here are no facilities, services, or programs available which
would meet the needs of the child.@  [Emphasis added.]  Id.

The statute requires the use
of Areasonable@ efforts,
not all possible efforts, to prevent or eliminate the need for removal.  See Tex.
Fam. Code Ann. '
54.04(i)(1)(B).  The record demonstrated
that other AIntermediate@ category services used by Appellant had been insufficient to prevent
his assault on Michael.  The trial court
implicitly found that Appellant=s problems ran beyond what AIntermediate@ category
services could solve, supported by testimony at the disposition hearing and
other evidence in the record.  Cf. In
re L.G., 728 S.W.2d 939, 945‑46 (Tex. App.CAustin 1987, writ ref=d n.r.e.) (stating that when the only evidence in the record was to
the effect that local services were available and that appellant could have
been rehabilitated locally, there was no evidence to support the trial court=s reasons given for commitment).








The trial court had the
discretion to determine that the services previously provided to Appellant,
although reasonable efforts, had not been sufficient to prevent or eliminate
the need to remove Appellant from his home. 
In light of Michael=s description of his injuries, Appellant=s completion of AIntermediate@ category services prior to the third assault, and the absence of any
testimony to show why Family Preservation would be a viable option when TCAP
and JJAEP had failed to prevent the third assault,[11]
we cannot say that the trial court abused its discretion by finding that
commitment was a more appropriate disposition. 
We overrule this portion of Appellant=s first point.

Required Care, Support, & Supervision

The trial court found that
Appellant, in his home, could not be provided with the quality of care and
level of support and supervision he needed to meet the conditions of
probation.  See Tex. Fam. Code Ann. ' 54.04(i)(1)(C).  Appellant
asserts that the evidence failed to support this finding and that Irons=s testimony established that his family could provide an environment
for quality care, support, and supervision.








Irons testified that
Appellant was Apretty much
follow[ing]@ his parents= household rules and was doing well in his behavior at home, and that
he had made sure the electricity was back on at the parents= house.  Irons did not testify
at all about Appellant=s behavior
outside of home and school or make any observations about the parents= level of support or supervision other than to note that Athere hasn=t been a
problem with his behavior at home.@ [Emphasis added.]

Appellant=s father and mother testified that Appellant followed the rules at
home and that they believed he would be able to follow the terms and conditions
of any probation ordered by the judge. 
Appellant=s
grandfather testified that he thought Appellant could Amake the grade@ when asked
whether he thought Appellant would be able to follow any rules and terms and
conditions of probation if the judge decided to place him on probation.
Appellant=s
grandfather denied knowing about Appellant=s fights, beyond the school Ascrapes,@ and claimed
that marijuana use was not in Appellant=s nature. Appellant=s mother also testified that she had not known about Appellant=s drug use, although she testified that she did not work and was home
all day, and Appellant had been living with his parents while on probation for
his prior assaults and while violating that probation.  Appellant=s father testified that he knew about the fights at school but
indicated that he thought Appellant had been provoked.













Neither Appellant=s mother nor his grandfather testified with regard to  any support or supervision they could provide
to make sure that Appellant met any terms and conditions of probation.  Appellant=s father did testify that he would be with Appellant Aevery step of the way@ if Appellant was ordered to counseling and would make sure that
Appellant took responsibility for doing whatever was ordered.  Appellant=s father also testified about his varying work schedule and that he
had not been aware of Appellant=s marijuana problem.[12]
        In A.S., unlike the instant
case, the court held that the evidence supported the juvenile probation officer=s conclusion that A.S.=s mother had adequate control over him and could provide the required
level of care and support.  A.S.,
954 S.W.2d at 862-63.  The court stated
that the only contradictory evidence in the record was the offense at issue and
his violation of his mother=s curfew while committing that offense, and that there was no evidence
to establish that A.S. had committed any other offenses.  Id. at 863.  A.S. had never been referred by the probation
offices in either El Paso or Midland, where the mother had moved the family in
order to protect A.S. from gang influences. 
Id.  In contrast, the
record shows that Appellant has established a pattern of assaults and probation
violations, and his probation officer testified only that Appellant Awould be appropriate for traditional probation@ and followed his parents= home rules.[13]  Considering all of this testimony, we hold
that there was factually sufficient information for the trial court to conclude
that Appellant could not be provided with the quality and level of care,
support, and supervision needed to meet probation conditions and keep him in
his home, because the evidence supporting the trial court=s finding was not so weak, nor evidence to the contrary so
overwhelming, that the finding should be set aside.  See Garza, 395 S.W.2d at 823.  Therefore, the trial court did not abuse its
discretion in making its finding.  See
M.A.C., 999 S.W.2d at 446.  We
overrule this remaining portion of Appellant=s first point.

CROSS‑EXAMINATION

In his second point,
Appellant complains that the court erred by not allowing him to fully cross‑examine
Michael at the disposition hearing and that this constituted a violation of his
Sixth Amendment right to cross‑examination of witnesses at trial.

Preservation Of Error








To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling,
if they are not apparent from the context of the request, objection, or motion.  Tex.
R. App. P. 33.1(a); see also Tex.
R. Evid. 103(a)(1).  If a party
fails to do this, error is not preserved, and the complaint is waived.  Bushell v. Dean, 803 S.W.2d 711, 712
(Tex. 1991) (op. on reh=g).  Here, Appellant complains that he was not
allowed a full cross-examination of Michael at the disposition hearing,
essentially arguing that error occurred in the exclusion of evidence.  To preserve error when evidence is excluded,
Appellant must have made a timely and specific objection and must have
presented a formal bill of exception to the trial court unless the substance of
the excluded evidence was apparent from the context within which the questions
were asked.  See Tex. R. App. P. 33.2.; Tex. R. Evid. 103(a)(2).

At the disposition hearing,
Appellant=s counsel
cross-examined Michael as follows:  

Q:             Mr. Cummings, this is the first time that you have said
that this girl was getting beat up.  That
was not the case.  She was not getting
beat up at all, was she?

 

A:             Yes, she was.

 

Q:             Then why did you not testify to that at the prior
trial.  Why did you say that she was just
swinging?

 

State:        Your Honor, I=m going to have to object
that this is outside the scope of this disposition hearing.  [Appellant has] already been adjudicated
delinquent.

 








Appellant=s counsel: Your Honor, we
just went through the whole 

trial again in front of you unfortunately.

 

Court:        Well, I=m not
going to try this case again.  I will
allow you to answer this one question; however, that=s
it.  We=re
not going to go into any further defenses and retry this case, because he
testified about what he saw and you had a right to cross‑examine him
about that issue in those questions.

 

Appellant=s
counsel: Well, his testimony has changed, Your Honor, 

and I=d
just like to put that out to the court.

 

Court:        All right.  Well, he
can answer that question.  Can you answer
that question?

 

A:             The girls were hitting, punching, and kicking her.  They were beating her up, and that=s why
I decided to go across the street and to stop it, and that=s the
way I testified.[[14]]

 

Q:             Your Honor, may I ask one more question?

 

Court:        All right.

 

Q:             And I assume you=re still denying the fact
that you struck Mr., or you struck this young manC

 

A:             I did not strike any one of the five teenagers.








Q:             Cbefore
the altercations happened?

 

A:             No, I did not strike him.

 

Appellant=s counsel: That=s
what I thought.  I don=t
have any 

questions of this witness, Your Honor.

 

Appellant did not present a
bill of exception at the disposition hearing to demonstrate what evidence he
would have otherwise attempted to obtain on cross-examination, and the
questions that he did ask were answered. 
He concluded by stating, AI don=t have any
questions of this witness.@  At the hearing on his motion
for new trial, Appellant argued to the judge

[W]hen
you have one judge doing disposition and one doing the adjudication, you
basically heard one side of the story.  I
don=t
think you were allowed to hear the mitigating and the self-defense and the
issues about the other parties involved, and I understand you don=t
want to relitigate the case [from] the adjudication, but at the same time, I
think the testimony of [Appellant] and the testimony of the cousins who were
there with him would have probably had a different effect on what your ruling
was.  [Emphasis added.]

 

Although Appellant and his
cousins testified at the adjudication hearing, none of them testified at the
disposition hearing.  Appellant complains
that his right to cross-examination of Michael was violated, but he has neither
preserved nor presented anything for our review.  See Tex.
R. App. P. 33.2.; Tex. R. Evid.103(a)(2).[15]  Therefore, we overrule his second point.








CONCLUSION

Having overruled both of
Appellant=s points, we
affirm the judgment of the trial court.                                                          

 

PER CURIAM

 

PANEL F: 
HOLMAN, J.; CAYCE, C.J.; and LIVINGSTON, J.

DELIVERED: 
April 19, 2007











[1]See Tex.
R. App. P. 47.4.





[2]Michael is a forty‑seven-year‑old
married father of five who works as a human resources manager at Home Depot.





[3]The social history report listed
Appellant=s two previous assault offenses.
Appellant was adjudicated delinquent on each offense.





[4]Michael testified that he sustained
a cut to his ear from the blow that knocked him to the ground.  When he hit the ground, he sustained a cut
near his eye and testified that he Areceived multiple fists to the back of the head@ and kicks on both of his
arms.  He testified that he sustained a
dislocated and fractured right elbow, and the radial arm of his right elbow was
broken in half. He testified that two weeks after the assault, he had surgery
to reconstruct the elbow and an appliance and five screws were installed to
reattach the fragments and bone sections that broke off the top of the
bone.  To regain movement and use of his
arm, he attended physical therapy two to three times a week.





[5]It found that Appellant was in need
of rehabilitation and Athat the protection of the public
and the child requires that disposition be made.@ 
It found that it was in Appellant=s best interest to be placed outside his home, that
reasonable efforts were made to prevent or eliminate the need for the removal
and to make it possible for Appellant to return home, and that Appellant, at
his home, could not be provided the quality of care and level of support and
supervision needed to meet the condition of probation.





[6]Under these facts, the court could
commit Appellant to TYC without a determinate sentence.  See Tex.
Fam. Code Ann. ' 54.04(d)(2) (Vernon Supp. 2006)
(stating that when child has been adjudicated delinquent and the requirements
of subsection (s) are met, of the grade of misdemeanor, the juvenile court may
commit the child to TYC without a determinate sentence).  Subsection (s) provides that the court may
make such a disposition if (1) the child has been adjudicated as having engaged
in delinquent conduct violating a penal law of the grade of misdemeanor on at
least two previous occasions, (2) of the previous adjudications, the conduct
that was the basis for one of the adjudications occurred after the date of
another previous adjudication, and (3) the conduct that is the basis of the
current adjudication occurred after the date of at least two previous
adjudications.  Id. ' 54.04(s).  Appellant=s offense history established that he fulfilled subsection
(s)=s requirements.





[7]We apply the criminal standard of
review to a claim that the evidence was factually insufficient to support an adjudication
of delinquency, because in a juvenile adjudication proceeding, the State must
prove beyond a reasonable doubt that the juvenile engaged in delinquent
conduct, the same burden as in a criminal case at guilt‑innocence.  C.J.H., 79 S.W.3d at 702‑03.  But we apply the civil standards when
reviewing the factual sufficiency of the findings at the disposition
phase, because, like the punishment phase in a criminal case in which the State
generally has no burden of proof, the family code imposes no burden of proof on
the State.  Id.





[8]There is a conflict in the record
with regard to the date of the second assault. 
Irons testified that Appellant was still on probation for his first
assault when he committed his second assault on October 13, 2005.  However, Appellant=s social history shows that the
second assault occurred on October 13, 2006. 
The social history contains the error because the probation period for
the second assault is listed as A11/01/06 to 5/01/06,@ a temporal impossibility. 
The disposition order shows that Appellant=s second assault actually occurred
on October 13, 2005, with an adjudication on November 1, 2005, which would have
made his probation period from November 1, 2005 to May 1, 2006.  Therefore, he was still on probation for his
second assault when he assaulted Michael on April 23, 2006.





[9]The social history also lists a
theft referral on Appellant, for property $500-1500, and that he received a
supervisory caution.  Although the social
history lists the date of the referral as A04/11/05,@ it is listed after both of his prior assaults.





[10]AFamily Preservation@ is a program that provides

 

[I]ntensive in‑home and 24‑hour
crisis intervention services to youth on probation and their families who are
experiencing problems that may be contributing to the youth=s unlawful behavior.  Families receiving Family Preservation
services are seen in their homes at least once or twice weekly by a Family
Preservation specialist, and they have 24‑hour accessibility to a
therapist for emergencies.  Family
Preservation utilizes counseling, skills‑based treatment (parenting,
social skills, anger management, conflict resolution, problem solving, and
daily living skills), and resource coordination as intervention strategies,
based on a plan developed in concert with each family.  Services last four to six months and are
provided via contract with Lena Pope Home. 

 

Tarrant County Juvenile Services, Family Preservation,
http://www.tarrantcounty.com/ejuvenile/cwp/view.asp?A=737&Q=427759 (last
visited March 29, 2007).

Tarrant County Juvenile
Services has a variety of programs, categorized from least to most
restrictive.  See id.,
Continuum of Services,
http://www.tarrantcounty.com/ejuvenile/cwp/view.asp?a=738&q=427857 (last
visited March 29, 2007).  Juvenile
Services lists Family Preservation with TCAP and JJAEP in the AIntermediate@ category.  Id. 
Texas Youth Commission is listed in the more restrictive ASecure Care@ category.  Id. 





[11]After Irons was asked why Appellant
was not assessed for Family Preservation after the second assault, the record
reports Irons=s reply as, ATCAP, then Family Preservation
(inaudible).@ 
This is the extent of testimony about Family Preservation at the
disposition hearing.





[12]Appellant=s father testified that the
electricity had been shut off to their home because he had lost his job but
that he had found another job and now the utilities were back on.  He testified that at his new job, he works
from noon to Awhatever time I finish in the
evening,@ and elaborated that this could be
anywhere between nine and eleven.





[13]Irons testified that Appellant=s parents Asaid [Appellant] was doing well at
home,@ and that Aas far as their control over him
and then him doing things that he=s supposed to do for his parents and his behavior with his
parents, he=s doing well.@





[14]Michael=s testimony was essentially the
same at both hearings.  He testified at
the adjudication hearing, AAt first, I thought [the girls] were just going over to
talk to [the other girl], but then I realized that they were taking swings at
her, that it was less than friendly.  At
this point, two more girls went running across the street and surrounded the
girl, also pushing, shoving, kicking her, and pretty much herding her . . . .@ 
He testified that after he began to follow them,  AThey were about a half a block ahead of me, still moving
and walking as they were pushing and kicking and hitting at this girl.@





[15]Even assuming Appellant had
preserved and presented his bill of exception, the trial judge was correct in
her statement that the adjudication did not need to be relitigated.  A finding of delinquent conduct must be
arrived at through an adjudication hearing that provides full due process
safeguards.  See J.K.A. v. State,
855 S.W.2d 58, 61 (Tex. App.CHouston [14th Dist.] 1993, writ denied).  However, after the court has found delinquent
conduct at the adjudication hearing, the only issue at the disposition
hearing is the proper corrective action to be imposed, so there is no need for
any new adjudication of delinquent conduct. 
See id. at 61‑62; see also In re M.P., 2007 WL
417126, at *8 (Tex. App.CWaco February 7, 2007, no pet. h.)
(stating that a juvenile has no Sixth Amendment right of confrontation during
the disposition phase).